1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

RUMEYSA OZTURK,                    )
                                   )
                                   )
         vs.                       ) CASE NO. 2:25-cv-374
                                   )
PATRICIA HYDE, MICHAEL KROL,       )
TODD LYONS, KRISTI NOEM,           )
DONALD J. TRUMP, MARCO A.          )
RUBIO,                             )
                                   )
                  Defendants.      )
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _)

Telephonic status conference held at 12:11 p.m. on Monday, April 7, 2025, in Burlington, Vermont, before Honorable William K. Sessions, III, District Judge.

Sarah M. Bentley, CCR-B-1745
 Registered Professional Reporter and Notary Public

BENTLEY COURT REPORTING
sbireland7@gmail.com

2

A P P E A R A N C E S


For the Plaintiff:

       LIA N. ERNST, ESQ. (via telephone)
       ACLU Foundation of Vermont
       P.O. Box 277
       Montpelier, Vermont  05601-0277
       lernst@acluvt.org


       RAMZI KASSEM, ESQ.  (via telephone)
       Main Street Legal Services, Inc.
       CLEAR Project
       CUNY School of Law, 5th Floor
       2 Court Square
       Long Island City, New York  11101
       (718) 340-4558


For the Defendants:

       MICHAEL P. DRESCHER, ESQ.  (via telephone)
       Assistant United States Attorney
       United States Attorney's Office
       3rd Floor
       11 Elmwood Avenue
       Burlington, Vermont  05402-0570
       (802) 951-6725
       michael.drescher@usdoj.gov


Also Present:

                                                          3

                          I N D E X


                                                    PAGE

Statements by Mr. Kassem                    6, 27, 30


Statements by Mr. Drescher                     19, 26


Statement by the Court                     18, 23, 28


                    *       *       *

4

P R O C E E D I N G S

THE CLERK:  Please be seated.

THE COURT:  Good afternoon.

THE CLERK:  This is Civil Case No. 25-374, Rumeysa Ozturk vs. Patricia Hyde, Michael Krol, Todd Lyons, Kristi Noem, Donald J. Trump, and Marco Rubio.

Present for the plaintiffs by telephone is Lia Ernst and Ramzi Kassem.

Present for the defendant is Assistant United States Attorney Michael Drescher.

The matter before the Court is a status conference.

THE COURT:  All right.  This is a status conference.  Let me set, as I understand it, the background to this Court's involvement.

First, the petition was filed in the District of Massachusetts.  Soon after the petition was filed the government filed a motion to dismiss, essentially arguing, first, that there was no jurisdiction in Massachusetts because at the time of the filing of the petition the petitioner was not in the district

5

of confinement and did not identify the persons who were restricting her liberty. And, as a result, the matter should be dismissed for lack of jurisdiction.

Second, the government is also arguing in its motion to dismiss that under the Immigration and Nationality Act essentially the Court, this Court, the Article 3 court has no jurisdiction, and this was exclusively delegated to the immigration authorities. And, of course, the petitioner has objected to both of those requests.

Finally, the petitioner has also requested a release from confinement.

It seems to me that the Court needs to address the question of whether it has jurisdiction in this case, both in terms of whether the petition that was filed in Massachusetts on the 25th of March gave the Court jurisdiction and, second of all, whether the Court still has jurisdiction in light of the application of the Immigration and Nationality Act.

First, the Court has to decide whether it has personal jurisdiction in this particular

6

case.  If it does, then the Court needs to address the request on the part of the petitioner for release from confinement.

So let me turn to the lawyers for the case, first the lawyers for the petitioner, Mr. Kassem.

And, also, Mr. Drescher I think is representing the government; is that correct?

MR. DRESCHER:  It is.

THE COURT:  Okay.  So let me ask you whether I described the background correctly and tell me, I think you have requested a status conference, Mr. Kassem, I believe, and so tell me what your thought is about how we proceed.

MR. KASSEM:  Thank you, your Honor.  Good morning.

THE COURT:  Good morning.

MR. KASSEM:  This is Ramzi Kassem for the petitioner, Rumeysa Ozturk.  I'm from the CLEAR Project at CUNY School of Law.

First of all, on behalf of our client and the rest of the legal team, I'm like to thank the Court for its attention to this pressing matter.

And with the Court's permission I'd like

7

to take just a few minutes to review the case's stance from our perspective, and if the Court will indulge --

THE COURT:  Yes.

MR. KASSEM:  -- I have four keys points.

THE COURT:  Yes.

MR. KASSEM:  First of all, your Honor --

THE COURT:  I think you should identify exactly what is before the Court.

I don't think that you have to get into extended argument at this particular point.  I should tell you that I have read all of the pleadings that were before Judge Casper in Massachusetts.  I've also read her decision and begun research into the issues that are presented by this really unique case.

So -- but you don't need to get into the argument.  You're going to have plenty of opportunity to do that in the very near future, but go ahead.

MR. KASSEM:  Thank you, your Honor.

I mean, the top one, your Honor, is, of course, that Ms. Ozturk was locked up by ICE and by the government essentially for co-authoring an op-ed in a Tufts campus newspaper.  So that

8

is retaliation for her speech, we allege, which also -- which also chills not just her speech but the speech of many others, offending our most basic notions of freedom.

And in her case it's part of a larger pattern, as your Honor well knows by now, including such cases as Mr. Mahmoud Khalil's case, Dr. Badar Khan Suri, and, also, Yunseo Chung, Rajani Srinivasan and Momodou Taal, and the list does not end there.

So from our perspective, your Honor, the Court has the power to grant release right now. The government has responded to the amended habeas petition, as the Court well knows. Petitioner has replied, so that petition is fully briefed and ripe for decision, particularly as to the urgent detention claims raised in habeas, and so the Court could today grant the writ, order the petitioner's release, and then we litigate the remaining --

THE COURT:  One, as I say, I have read the motion to dismiss.  I've read your response.

The problem, of course, is that when the case was in Massachusetts you were in the 1st Circuit.  And one of the observations that I

9

made in regard to the memoranda that were submitted is that you focused, quite naturally, on 1st Circuit law.  In particular, the Vasquez became very much a part of the issue.  That's a 1st Circuit case.

Well, you're now in the 2nd Circuit. And, of course, the Court responds directly to the expertise of the judges of the 2nd Circuit, and there is no research that has been shown to me about how the 2nd Circuit has applied some of these concepts of law in its precedent.

So I appreciate the fact that you say that the motion to dismiss is fully briefed but, in fact, it's not because nobody has dealt with 2nd Circuit cases.

Do you disagree?

MR. KASSEM:  We fully appreciate that point, your Honor.  And, in fact, if I may just make two points in quick response.

First, you know, as extraordinary as this case may be, your Honor has already recognized the Lakhani case, L-A-K-H-A-N-I, the well-established principal that habeas cases should be filed in the judicial district in which the petitioner is held at the time they

10

are filed, and so this case is no different from that. And so the issue is not entirely novel to the Court.

The second point I'd like to make, your Honor, is that should the Court understandably wish to see additional briefing under 2nd Circuit case law, that briefing has already occurred in other cases, including one that my organization and some of our co-counsel are involved in and, of course, that the government is involved in in the 2nd Circuit so that should not delay the issue.

Because, of course, the cost of the delay is being born by Ms. Ozturk, and for habeas purposes that is a grave harm and that's why habeas exists as a remedy, as the Court well knows.

So what we would propose, your Honor, is that to the extent that any additional briefing is needed, whether it's on bail or venue, that briefing should be expedited, ideally starting with bail first or at least proceeding on parallel tracks where one does not hold up the other.

And what we would suggest is that

11

plaintiffs file any -- any supplement with 2nd Circuit case law tomorrow.  You know, respondents can either file simultaneously or by the following day, Wednesday.  We would be willing to waive our reply and tee up the issues, and we'll willing to do this, your Honor, both on bail as well as venue; to tee up the issues for resolution as soon as possible.

Petitioner's counsel would be glad to appear later this week for a hearing, should the Court wish to call us in, or at the earliest possible time convenient to the Court.

THE COURT:  Well, as I assess the issues, you have hit two of them.  That is, the bail question, obviously, and whether there's jurisdiction as a result of the filing of the petition in Massachusetts at a time when the petitioner was located.  That's her district of confinement was in Vermont, and so the question is whether that's a valid petition or whether it should be dismissed.

But there's a third issue as well, and of course the government has requested, in its motion to dismiss, to dismiss the case based upon the Immigration and Nationality Act.

12

You've responded to that in your briefing.

You haven't responded necessarily with 2nd Circuit case law, but it seems to me that before the Court addresses the issue of release, that the Court make a determination that it, in fact, has jurisdiction, and that requires the answer both to the question about whether it's a proper place of filing but it also requires an answer to the initial question as to whether this case should be dismissed under the Immigration and Nationality Act.

And do you agree with that?

MR. KASSEM:  Well, your Honor, we take a slightly different perspective, both on that point and, of course, on the government's position as to the INA jurisdictional bars that your Honor is referencing.

Our view, your Honor, is that, respectfully, the Court can rule on the venue issue should it so decide, and at that point the Court would have jurisdiction to order release.

Of course, our client is not a flight risk.  The government has not contended that she's a flight risk.  All she wants to do is to return to her home and to her studies at Tufts,

13

and at that point we could litigate the jurisdictional bars.

And should the Court at the end of that process conclude that the government has the better end of the argument on the INA jurisdictional bars, then all the options would be left on the table for the government.

The government would be no worse off should it seek to re-detain Ms. Ozturk following a dismissal of the habeas petition and complaint based on the INA jurisdictional bars.  That option would be on the table.  The government would be no worse off.

Your Honor, our concern is the delay that would be occasioned by lengthy litigation over these jurisdictional questions because the cost of that delay would be born by Ms. Ozturk.

And recently, as in the Srinivasan case, the Supreme Court has held that the habeas corpus, the cost of the delay, should not be born by the detainee.

So the appropriate course here would be for the Court to rule on venue and bail as a priority, and then we can litigate the INA jurisdictional bars, which actually merge into

14

the merits of the blended petition and complaint that we filed.

And so it's appropriate to litigate those at that stage while Ms. Ozturk is back home at Tufts completing her course of study.  Again, the government would be no worse off by that outcome.

The alternative would place the cost of delay squarely and exclusively on the shoulders of Ms. Ozturk, which the Supreme Court has already said is inconsistent with the purpose of the great writ.

THE COURT:  Well, you've got a filing by the government under the Immigration and Nationality Act which seeks dismissal.  You have a whole briefing from the government.  You apparently have fully briefed the response.

Don't you think, assuming that there's an update to reflect the case law in the 2nd Circuit, don't you think the Court could address the motion to dismiss quickly based upon the pleadings that have already been submitted and the pleadings that would be submitted that are updating the previous submissions by additional case law?

15

So we're not talking about a significant delay. You know, quite frankly, I was fully anticipating addressing the motion for the jurisdiction, the motion to dismiss under the Immigration and Nationality Act, and the question of release on confinement expeditiously.

And, in fact, you know, my thought, and I will submit to you and then I'll ask Mr. Drescher to respond for the government, is that I would give both sides until Thursday at 5 o'clock for the submission of updated briefing on the motion to dismiss and the motion for no jurisdiction for the Court, as well as the request for release from confinement, all briefing for that by Thursday.

I'd make available the Court for argument on Monday, Monday morning, and, also, submission of any evidence that either side would want to provide.

I mean, I know that you've submitted a whole series of affidavits. I don't think it's necessary that it be oral testimony, but it may be that one side or the other may request oral testimony.

16

Frankly, I would make my schedule available on Monday, into Tuesday and with a full eye -- with a full goal of addressing all of these issues expeditiously.  And so you tell me if you have an objection to that process.

That is, opening up the Court for hearing on Monday with the idea that I would address all of these issues quickly.

MR. KASSEM:  Thank you, your Honor, and, again, we truly appreciate, all of us, including our client, we all appreciate the Court's prompt attention to this case, including the schedule that your Honor is suggesting.

I would just like to make two points.  As your Honor appreciates, from our perspective Ms. Ozturk has already spent 13 days behind bars at a facility in Louisiana, a distance from her community, all for writing an op-ed, which is already far longer than any free society should tolerate.  And that's where, you know, our position -- that's what our position is rooted in fundamentally.

The other point I'd like to make, your Honor, is to share with the Court what we, those of us who have represented other similarly

17

situated petitioners in other cases outside of this district, what we've seen in those cases; for example, the Mahmoud Khalil case, which has dilatory tactics.

And, of course, I do not impute that intention onto opposing counsel here, but I'm just sharing sort of the larger pattern that we've seen, which is re-litigation of the venue issue in the transferee court, which here in the District of Vermont is the transferee court under 1631, following the ruling by the District of Massachusetts.

So venue re-litigation followed by a request for certification for interlocutory appeal and probably a stay motion.

So, again, this is our concern, is that, you know, getting into the jurisdictional questions, including the INA bar arguments that the government has made, would again shift the cost of delay onto Ms. Ozturk.

But with that said, your Honor, I think the schedule you're proposing is certainly expedited. With the Court's permission, perhaps while Mr. Drescher addresses the Court, I will confer with my co-counsel, and then if the Court

18

permits me to come back on mic I'll share our position.

THE COURT:  Okay.  And as you share with co-counsel the Court's suggestion, you know, understand that the first thing the Court has to do in any litigation is make a determination as to whether it has jurisdiction.  And if it doesn't have jurisdiction, it has no authority or power to order anything.

So I appreciate the difficulties that you're experiencing with your client being incarcerated, but understand that to actually address this question thoroughly and correctly I first have to make a decision in regard to whether, in fact, I have jurisdiction and whether a motion to dismiss, it seems to me, should be granted.

What I'm offering to both sides is an expedited process by which this would be resolved quite, quite quickly.

So with that, Mr. Drescher, you've heard the issues that have been presented by the petitioner and the previous pleadings by the government.  What is your thought as to whether or not the schedule that the Court is proposing

is acceptable?

MR. DRESCHER:  Thank you, your Honor.

We agree that jurisdiction is absolutely the threshold issue that the Court needs to address; that the provisions of Title 8 raise serious jurisdictional questions that the Court has to navigate and deal with in deciding whether it has jurisdiction over this case.

An additional wrinkle that I'm not sure may be on your Honor's radar is the question as to whether the transfer under 1631 is appropriate or whether 1631 on its face vests this Court with jurisdiction.  That is a question that the district court in New Jersey in the Khalil case that Mr. Kassem referenced has actually certified for an interlocutory appeal.

In that case New Jersey was the transferee district from the Southern District of New York.  The application of 1631 needs to be dealt with as well, and the government intends to supplement.  Or actually in light of the Court's -- in light of the Court's vision for how to proceed here, we'd be arguing that under 1631 -- that 1631 does not create

20

jurisdiction in this court, and that under 1631 the appropriate district for the case to be transferred to is in the Western District of Louisiana rather than Vermont.

We also agree with your Honor that the briefing that occurred in Boston was, quite understandably, very 1st Circuit centric and that this Court should have the benefit of 2nd Circuit research, specific research on this case.

And then with regard to the schedule, of course we're going to do whatever the Court directs in that regard.  The one reason why a slower schedule might make sense, and I'm going to suggest to the Court, is that it is my understanding that petitioner has the opportunity to seek release on conditions before the immigration judge.  I do not know --

THE COURT:  Well, wasn't she before the immigration judge this morning?

MR. DRESCHER:  Perhaps her counsel can address that.

MR. KASSEM:  Your Honor, no, she was not.

THE COURT:  She was not?

MR. KASSEM:  She was not.

21

THE COURT:  I thought there was a hearing scheduled for the morning of the 7th, and I was wondering whether there were any developments about her confinement?

MR. KASSEM:  Your Honor, there may have been some confusion.  There is an immigration court hearing in another case, Mr. Khalil's case in Louisiana today, so that may have been, you know, the news that reached the Court.

But with respect to Ms. Ozturk, there is no immigration court hearing today.  In fact, there is none on the calendar.

What is immediately teed up in the immigration case in Louisiana for Ms. Ozturk is that the government has until April 24th to respond to Ms. Ozturk's denial to immigration counsel of all charges.

THE COURT:  Well, I --

MR. KASSEM:  And, your Honor, to clarify, the immigration court cancelled the hearing that was originally on schedule for today.

THE COURT:  Oh, I see, so that there was a hearing.

Because I read your pleadings.

MR. KASSEM:  Correct, your Honor.

22

Correct.

THE COURT:  And I was -- it was clearly indicated that she was going to be before the immigration court this morning.  But what you're saying is that the immigration court postponed the hearing?

MR. KASSEM:  You were correct, your Honor.  The immigration court cancelled the hearing in favor of the briefing scheduled that I just mentioned.

So Ms. Ozturk denied the immigration charges in immigration court, and now the government has until April 24th to respond in writing.

THE COURT:  All right. And as far as you know there's no request for release pending before the immigration court?

MR. KASSEM:  Not at present, your Honor.

THE COURT:  Okay.

All right.  Mr. Drescher, you've added an additional issue and you've also agreed with me that the pleadings have to be updated to include 2nd Circuit case law.

Well, do you have any objection to ordering that all of the briefings be submitted

23

by 5 o'clock Thursday afternoon and that the Court would be available for argument of counsel on Monday and that if, for any reason, any side wishes to call witnesses, that they would notify the Court in advance?

The witnesses would be called, and the Court would make available time for the hearing of those witnesses if the Court felt it necessary to hear from those witnesses.  And that hearing would start on Monday and continue until completed.

Is there any objection to that schedule?

MR. DRESCHER:  My only -- in short, your Honor, yes.  My objection is that planning for an evidentiary hearing before the Court has addressed the question of jurisdiction seems -- it seems irregular under the circumstances; that we need to understand the Court's authority.

THE COURT:  Except it's not really.  So when you actually look at the question about the filing in Massachusetts when, in fact, she was in Vermont, the question is whether that filing has to literally comply with the rules in regard to habeas corpus petitions, or are there exceptions in extraordinary circumstances?

24

And I would suspect, because I don't want to get off into this litigation at this point, but I would suspect that the petitioner may say that she doesn't have to follow all of the literal requirements like district of confinement.

In a situation in which she has no idea where her client is, the lawyer would have no idea where the client is, and as a result the argument may be that the filing in Massachusetts for judgment here is essentially a filing for habeas in any place once she finds out where the client is.  That is extraordinary circumstances, and the question is whether extraordinary circumstances apply in this case.

So it may be that one side would want to introduce evidence to show what the extraordinary circumstances were, which justified the Court accepting the submission of the petition that was filed in Massachusetts as one that's effective in Vermont.

That means that we may have evidence in regard to how the process happened, and that is before we make a determination as to whether the Court has jurisdiction because that -- that is

25

related to whether the Court has jurisdiction.

So there could be a circumstance, I would imagine, in which some party would want to call evidence about what happened and why the petitioner was not able to file in Vermont when the petitioner was in Vermont. And that all relates to the question of extraordinary circumstances justifying some variance as to the legal requirements of the filing of a habeas petition.

So I don't know. I don't -- I don't mean to speculate. Well, I guess I do speculate. That's my nature, but I just wonder whether there may be evidence in regard to the exceptional circumstances surrounding the filing of the petition that may require evidence. And it may require evidence if the Court eventually gets to the issue of release.

Either party may want to call witnesses in regard to whether she poses a danger of flight or of risk to the community. Either side might want to provide evidence in that regard.

So I -- what I would really want to do is to make sure that this is done in an expedited basis but a thorough basis.

26

So, you know, we'll give you until Thursday to submit whatever briefing you want to submit, and then we're available to open up the Court's schedule so that you could have the time that you need early on in the week.

And the expectation is that once the evidence has been completed, either by way of affidavit, all this could be by way of affidavit or oral testimony and, also, all of the legal submissions made and the argument of counsel, then the Court would be in a position to address the three separate questions.

And that's the motion to dismiss based upon the filing in Massachusetts when she, in fact, was in Vermont; the motion to dismiss as a result of the Immigration and Nationality Act; and then only if the Court finds jurisdiction, doesn't dismiss the case, finds jurisdiction would the Court then address whether she should be released.

And that's -- that's my thought. So tell me if you have any strenuous objection to that process.

MR. DRESCHER: This is Mike Drescher for the record.

27

My only requested addendum to your list of issues, your Honor, is the propriety of the 1631 transfer that I referenced earlier.

THE COURT:  That's correct.  That's the new issue that was not addressed before in the Massachusetts pleadings and Judge Casper's decision and, yes, that would be the fourth.

MR. DRESCHER:  Thank you.

THE COURT:  Okay.

All right?  Mr. Kassem.

MR. KASSEM:  Thank you, your Honor. Ramzi Kassem for the petitioner, Rumeysa Ozturk.

THE COURT:  Do you pronounce your name Kassem?  Is it Kassem?

MR. KASSEM:  Kassem, yes, your Honor.

THE COURT:  Mr. Kassem, what's your reaction to that?

MR. KASSEM:  Thank you for asking, your Honor.

Just a couple points, your Honor.  Your Honor's description is essentially, to my mind, a perfectly appropriate description of jurisdictional discovery which would be proper through an evidentiary hearing as the Court describes it.  And so -- and it would be limited

28

to the jurisdictional points as your Honor -- exactly as your Honor described.

I will say with respect to the evidence that is now on the record, because I have to say this, your Honor, there has been no allegation, nor could be there be any allegation that Ms. Ozturk is a flight risk or public safety concern of any sort.  And this is undisputed.

And, in fact, on the other side of that you have these voluminous filings, two dozen letters of support, including from the head of Tufts and other administrators, faculty advisors, other community members, all attesting to Ms. Ozturk's community integration and, in fact, to the harm that the community faces from her continued detention.  So that's what's in the balance right now.

THE COURT:  Yes.  So, Mr. Kassem, I appreciate that you're really want to make that point.  You made that point actually in your brief.

And you made the argument that there's no evidence to suggest that she would provide a risk of flight or danger to the community and that she has the support.  She's got all of the

29

affidavits.

You know, what I really want to do is make sure both sides have a full opportunity to introduce what they need to support their argument.  It may require some evidence; it may not.  It may require affidavits; it may not.

But, as a result, I think the Court is going to have adequate opportunity to give you a lot of time to be able to argue your case as to what the government has shown and what it hasn't shown and what the Court should conclude in terms of jurisdiction.  So I think this is all going to be fair game on Monday.

And if anyone wants to introduce oral testimony on Monday or Tuesday, then you should notify the Court that you are wanting to seek the introduction of certain testimony, summarize the testimony.

The Court will make a determination as to whether that's appropriate or not, but I'm hoping that the submissions, including the briefs and the testimony and the affidavits and the argument of counsel, will all be done by Tuesday.

MR. KASSEM:  Thank you, your Honor.  This

30

is Ramzi Kassem for the petitioner again.

I've had a chance to confer with co-counsel. We agree to the Court's -- we have no objection to the Court's appropriately expedited schedule. Briefs due on Thursday on the INA -- the asserted INA jurisdictional bars.

That's the motion to dismiss element of the government's response to our habeas petition, plus the venue 1631 issues, plus bail, so any supplemental by Thursday at 5:00 p.m.

And, your Honor, we welcome the opportunity and we will consider the need on our end to submit additional evidence or testimony and seek testimony going to the jurisdictional question.

I imagine if we were to go down that path, notice to the Court with any summaries necessary by Friday, would that be the Court's intention?

THE COURT: Any summary by Friday, yes, it would be the Court's intention.

So by Friday at 5:00 o'clock, if you want to submit any oral testimony, any witnesses, then you summarize the testimony and submit it to the Court with a copy obviously to the

31

opposing counsel, an opportunity over the weekend for opposing counsel either to object or consent, and then the Court would rule on Monday as to whether that witness can be called.

MR. KASSEM:  Understood, your Honor.

And a point of clarification I guess for both parties.  Would it be appropriate to submit a consolidated brief that addresses those three broad lines that we've identified instead of three separate briefs?

And, if so, would it be -- I guess under either scenario would additional pages be appropriate and agreeable to the Court?

THE COURT:  I think that you can combine them all in one memorandum.  Oh, absolutely.

I don't think it's necessary that you have a separate memorandum on the motion to dismiss and, you know, the jurisdiction arising out of the filing in Massachusetts, I think that would all be a part of one memorandum dealing with all of these issues.

Well, actually, I strike that.

So if there is a filing that you want to file in terms of argument for her release, you know, that's after the Court has made a

32

determination as to jurisdiction.  Then assume that the Court has made a determination as to jurisdiction, found that there's jurisdiction, has personal jurisdiction in this case, then the Court addresses the issue of her release.  So I think that would be in a separate filing.

But, again, in terms of calling witnesses, that would all be combined either on Monday or Tuesday of next week.

MR. KASSEM:  Okay.  Thank you, your Honor.

THE COURT:  So the answer is that those first three legal issues arising out of the Act and, also, the placement of the filing would be in one brief, and the release or detention would be in a separate one.

MR. KASSEM:  Understood, your Honor.

And would it be appropriate to seek leave of court right now for overlong briefs on both of those filings for --

THE COURT:  Well, I'm not going to limit the amount of pages that you want to file.  You can make it as long as you want.

MR. KASSEM:  Thank you, your Honor.  We will -- we will not burden the Court any more

33

than we have to, but we appreciate it.

THE COURT: So, yeah, I think there's something about briefs that are much too long become much less persuasive, but that's up to you.

MR. KASSEM: Understood, your Honor. Thank you.

THE COURT: Okay.

All right, Mr. Drescher, your response to this schedule and -- well, any response?

MR. DRESCHER: I think I've said my piece, your Honor.

I understand the Court's desire to move expeditiously; that that is the schedule that has been set, and we understand.

THE COURT: Good. That's good.

That's great. So we'll see you here on Monday, but meanwhile at 5 o'clock on Thursday I'll expect the submission of the briefs.

MR. KASSEM: Thank you, your Honor.

THE COURT: Okay.

Is there anything else we need to address at this point?

MR. KASSEM: Nothing for the petitioner, your Honor.

34

THE COURT:  Okay.

Mr. Drescher, anything else?

MR. DRESCHER:  I don't believe so.  Thank you, your Honor.

THE COURT:  Okay.  All right.  Thank you.

THE CLERK:  All rise.

(End of hearing at 12:50 p.m. and end of transcript of same.)

C E R T I F I C A T E

I certify that the foregoing is an accurate transcript from the proceedings in the above-entitled matter, dated this 8th day of April, 2025.

/s/ Sarah M. Bentley, RPR

_____
Sarah M. Bentley, RPR