```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

RUMEYSA OZTURK,                  )
                                 )
        Petitioner,              )
                                 )
    v.                           )    Case No. 2:25-cv-374
                                 )
DONALD J. TRUMP, in his          )
official capacity as             )
President of the United          )
States; PATRICIA HYDE, in her    )
official capacity as the New     )
England Field Director for       )
U.S. Immigration and Customs     )
Enforcement; MICHAEL KROL, in    )
his official capacity as HSI     )
New England Special Agent in     )
Charge, U.S. Immigration and     )
Customs Enforcement; TODD        )
LYONS, in his official           )
capacity as Acting Director,     )
U.S. Immigration and Customs     )
Enforcement; KRISTI NOEM, in     )
her official capacity as         )
Secretary of the United          )
States Department of             )
Homeland Security; and MARCO     )
RUBIO, in his official           )
capacity as Secretary of         )
State,                           )
                                 )
        Respondents.             )
```

**OPINION AND ORDER**

Respondents (hereinafter "government") have submitted a Motion for Continued Stay Pending Appeal. ECF No. 106. The Court previously issued a stay of its April 18, 2025, Opinion and Order (hereinafter "Opinion") for four days "to allow either party to appeal this order." ECF No. 104 at 74. On April 22, the

government availed itself of the opportunity to appeal to the U.S. Court of Appeals for the Second Circuit. ECF No. 105. This Court's stay expired on April 22. The government is now obligated to ensure that Ms. Ozturk is transferred to ICE custody within the District of Vermont no later than May 1, 2025. ECF No. 104 at 73.

At the outset, the Court notes that the government's motion largely recycles the same arguments that the Court has previously considered and rejected. The Court briefly summarizes its rationale for rejecting some of these arguments here again, but the Court refers the government to its Opinion for a fuller explanation if necessary. The Court considers the four factors from *Nken v. Holder* that the government has identified for evaluating a motion to stay and finds that they weigh against the government. 556 U.S. 418, 434 (2009). For the following reasons, the government's motion to stay Ms. Ozturk's return to Vermont is denied.

I. **Respondents Raise Jurisdictional Arguments that This Court has Duly Considered and Rejected.**

The government's motion devotes two pages to its argument that this Court lacks jurisdiction to consider Ms. Ozturk's habeas petition. The Court has previously considered these same arguments in these proceedings. Both the government and Ms. Ozturk filed lengthy briefs on these jurisdictional questions,

and the Court devoted significant attention to the parties' filings and oral arguments. The April 18 Opinion discussed these very questions, and the Court found that its jurisdiction is proper under 28 U.S.C. § 2241, that this Court is the appropriate place for the habeas petition to be heard following the petition's transfer to this Court under 28 U.S.C. § 1631, and that the INA does not bar this Court's review of claims regarding the legality of Ms. Ozturk's detention. ECF No. 104 at 12-66. The government's request that this Court now find that the government "has made a strong showing that [it] is likely to succeed on the merits," ECF. No. 106 (quoting *Nken v. Holder*, 556 U.S. at 434), is patently at odds with this Court's Opinion. The Court will not relitigate those issues here, and it finds that the government has not made a strong showing that it is likely to succeed on the merits of its jurisdictional arguments.

## II. The Balance of Harms and Potential Disruption of the Court's Proceedings Favors Rejecting a Stay

As the Court explained in its Opinion, habeas proceedings are by their nature equitable and flexible, and the Court has the authority and the mandate to ensure the integrity of its proceedings. ECF No. 104 at 67. The Court considered the government's clear opposition to transfer before issuing the Opinion, but the Court found "that the equities strongly favor Ms. Ozturk's transfer to Vermont." *Id.* at 67.

To briefly reiterate, Ms. Ozturk's physical transfer to ICE custody in Vermont will have no impact on the government's separate removal proceedings against her in immigration court. However, her return to Vermont will facilitate speedy resolution of her petition in this Court. At oral argument, the Court directly asked the government's counsel how the government would be prejudiced if Ms. Ozturk were returned to Vermont. ECF No. 98 at 109. Government's counsel did not then, and the government does not now, offer any concrete injury that the government would suffer. *Id.* at 109-110.

The government now argues that it, and by extension the public, would suffer an injury if Ms. Ozturk's detention were subject to judicial review. ECF No. 106 at 5-6. While the executive branch assuredly has an interest in effectuating statutes enacted by the legislative branch, the judicial branch is charged with ensuring that the other branches do so in comport with the laws and the Constitution. *Powell v. McCormack*, 395 U.S. 486, 506 (1969) ("'[I]t is the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government, and even those of the legislature in the enactment of laws, have been exercised in conformity to the Constitution; and if they have not, to treat their acts as null and void.'") (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 199 (1880)); *see also* W.

4

*Virginia v. Env't Prot. Agency*, 597 U.S. 697, 736 (2022) ("One of the Judiciary's most solemn duties is to ensure that acts of Congress are applied in accordance with the Constitution in the cases that come before us.") (Gorsuch, J., concurring); *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 327 (2013) ("But there is another concern at play, no less firmly rooted in our constitutional structure. That is the obligation of the Judiciary not only to confine itself to its proper role, but to ensure that the other branches do so as well.") (Roberts, C.J., dissenting); *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 76 (2015) ("The 'check' the judiciary provides to maintain our separation of powers is enforcement of the rule of law through judicial review.") (Thomas, J., concurring). Furthermore, the public interest does not lie only on the government's side in this case. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("[S]ecuring First Amendment rights is in the public interest.").

As the Court noted in the Opinion, the Court intends to resolve Ms. Ozturk's habeas petition expeditiously, and Ms. Ozturk's presence in Vermont is necessary to assist the Court with its consideration of her request for release on bail as well as the underlying merits of her petition. ECF No. 104 at 66-68. The Court notes that Ms. Ozturk's return to Vermont might not even be an issue in this case had the government not ignored

5

the order issued from the District Court in Massachusetts on March 25, 2025. ECF No. 104 at 68-72. As the Court held in its Opinion, the remedy here is simple, a return to the status quo. *Id.* at 72. Instead, Ms. Ozturk is in detention in Louisiana, where she reports that she is enduring overcrowding, unsanitary conditions, a worsening medical condition, insufficient medical care, and difficulties practicing her religion. *Id.* at 67. Furthermore, should the Court's schedule for resolution of Ms. Ozturk's habeas petition, *id.* at 73, be delayed in any way, the government will not have suffered any concrete injury through Ms. Ozturk's return to Vermont, while Ms. Ozturk will be well-positioned to present her case as soon as possible. Accordingly, the Court finds that the balance of harms of a stay of transfer would fall most heavily on Ms. Ozturk and would not be in the public interest.

## Conclusion

For the foregoing reasons, the government's motion for a stay of Ms. Ozturk's transfer to ICE custody within the District of Vermont is denied. As the Court established in its April 18 Opinion, "Ms. Ozturk has presented viable and serious habeas claims which warrant urgent review on the merits." *Id.* at 73. Any unnecessary delay of Ms. Ozturk's transfer to this District would likely disrupt or delay the Court's proceedings, potentially prolonging the very detention that is at the heart

of this case. Meanwhile, Ms. Ozturk's return to Vermont would not unduly burden the government and would restore the status quo at the time of the order from the District Court in Massachusetts. The Court ordered that Ms. Ozturk be returned to Vermont precisely so that the Court could resolve the habeas petition as expeditiously as possible, and the Court intends to do so.

DATED at Burlington, in the District of Vermont, this 24th day of April 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge