IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

**RÜMEYSA ÖZTÜRK**,
*Petitioner*

No. 2:25-cv-00374

*v.*

**Oral Argument Requested**

**DONALD J. TRUMP**, et al.,
*Respondents*

**Motion for Preliminary Injunctive Relief Restoring Ms. Öztürk's SEVIS Record**

**INTRODUCTION**

At the May 9, 2025 bail hearing, this Court ordered Rümeysa Öztürk's release after finding she had raised substantial claims that her detention violated the First Amendment and due process. ECF 140 at 17, 19-20; May 9, 2025 Tr. 107:22-23. The Court noted that Ms. Öztürk is "totally committed to her academic career" and anticipated that upon release she would fully resume her academic life, including teaching. May 9, 2025 Tr. 111:13-18, 112:9-12.

But notwithstanding Ms. Öztürk's release from detention, Immigration and Customs Enforcement (ICE) officials have not reactivated her record in the Student Exchange and Visitor Information System (SEVIS)—a database used to monitor the status of foreign students. ICE unlawfully terminated Ms. Öztürk's SEVIS record on March 25, hours after detaining her. In the two months since that termination first occurred, numerous courts have granted relief against terminations of students' SEVIS records, requiring the records to be restored. *See Parra Rodriguez v. Noem*, No. 3:25-CV-616, 2025 WL 1284722, at *8 (D. Conn. May 1, 2025) (collecting cases).

1

Preliminary injunctive relief is warranted here as well. As in other recent cases, the termination of Ms. Öztürk's SEVIS record does not comply with any regulatory reason for termination of student status, and it is both contrary to law and arbitrary and capricious. *See Ortega Gonzalez v. Noem*, No. 6:25-CV-00622, 2025 WL 1355272, at *5-6 (D. Or. May 9, 2025). And the termination of Ms. Öztürk's SEVIS record is unlawful for the additional reason that it constitutes impermissible retaliation for her protected speech. In addition to a likelihood of success on the merits of her claims, the equities weigh heavily in Ms. Öztürk's favor. Reactivation of her SEVIS record is essential to Ms. Öztürk's being able to return to the full range of her academic activities, and it does not interfere with the removal proceedings against her or with any legitimate government or public interest. Ms. Öztürk is accordingly entitled to preliminary injunctive relief requiring reactivation of her SEVIS record, and restoration of that record from the termination date to eliminate any gaps in the SEVIS record.

## BACKGROUND

**I.     Rules governing F-1 students and SEVIS termination.**

SEVIS is a database administered by ICE's Student and Exchange Visitor Program (SEVP) and used to track foreign students, including those in F-1 student status. 8 U.S.C. § 1372(a)(1); 8 C.F.R. § 214.3(g); *see also* 9 FAM 402.5-4(A) (SEVIS "is designed to monitor the academic progress, movement, etc. of foreign students and exchange visitors from entry into the United States to departure"). The termination of a student's SEVIS record prevents the student from being employed and has significant consequences for their ability to engage fully in academic life. French Decl. ¶¶ 18-19. It is permissible only for limited reasons, including the student's failure to maintain status. *See Parra Rodriguez*, 2025 WL 1284722, at *4-5.

2

### A.    The F-1 Visa Process and SEVIS record.

U.S. immigration law authorizes granting F-1 visas to noncitizens to come to the United States temporarily to "pursue a full course of study" at a government-approved U.S. educational institution. 8 U.S.C. § 1101(a)(15)(F)(i); *see also* 8 C.F.R. § 214.1(a)(2). A foreign student who wishes to study in the United States in F-1 status can obtain that status either after being admitted to the country on an F-1 visa granted by the Department of State, 9 FAM 402.5-5(B), or after applying to U.S. Citizenship and Immigration Services to change their status from another temporary status in the United States to F-1 status, *see* 8 C.F.R. § 248.1(c); *see also* 8 C.F.R. § 214.2(b)(7).

In either scenario, the intending student must first be accepted by a SEVP-approved school. *See* 8 U.S.C. § 1372; 8 C.F.R. § 214.2(f)(1); 9 FAM 402.5-5(C).[1] The school must create a record for the intending student in the SEVIS system and complete an I-20 form within that system providing information about the student and the academic program they will pursue. 8 C.F.R. § 214.2(f)(1)(iii); 9 FAM 402.5-5(D); ICE Student Steps Site, *supra* n.1.[2] An intending student who is outside the United States prior to beginning their course of studies must—after being accepted into a SEVP-approved school, having the school complete the I-20, and paying a SEVIS fee—apply for an F-1 visa at a U.S. embassy or consulate. *See* 8 C.F.R. §§ 214.2(f)(1), (f)(19), 214.13; 9 FAM 402.5-5(B)-(D); ICE Student Steps Site, *supra* n.1.  If granted a visa, the

---

[1] *See generally* ICE, *Student Process Steps: How to Navigate the U.S. Immigration System* (last visited May 23, 2025), https://ice.gov/sevis/students ("ICE Student Steps Site"); Department of State, *Student Visa* (last visited May 23, 2025), https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html; USCIS, *Changing to a Nonimmigrant F or M Student Status* (last visited May 23, 2025), https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/students-and-employment/changing-to-a-nonimmigrant-f-or-m-student-status ("USCIS Changing Status Site").
[2] *See also* Department of Homeland Security (DHS), Study in the States, *Create Initial COE (Form I-20)* (last visited May 23, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/certificates-of-eligibility/create-initial-coe-form-i-20.

3

intending student travels to the United States within 30 days of the start of their educational program. *See* 8 C.F.R. § 214.2(f)(5). If admitted by a U.S. immigration officer at a port of entry, the student is then in F-1 status. *See id.*[3]

Both students and approved educational institutions are regulated. The educational institution, for example, must agree to report to the U.S. government if an F-1 student stops attending the institution, as well as provide address and other information about the student. 8 U.S.C. §§ 1101(a)(15)(F)(i), 1372; 8 C.F.R. § 214.3(g). Each SEVP-approved school has a Designated School Official (DSO) that monitors and advises F-1 students. 8 C.F.R. §§ 214.2(f), 214.3(l); *see* Garson Decl. ¶ 1.

International students are also "subject to an array of regulations." *Jie Fang v. Director U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175 (3d Cir. 2019) (citing 8 C.F.R. § 214.2(f)). For example, F-1 students must maintain a "full course of study" and comply with restrictions on employment. 8 C.F.R. §§ 214.2(f)(5), (f)(6), (f)(9); *see Parra Rodriguez,* 2025 WL 1284722, at *2. SEVIS is used to monitor and report whether international students are complying with the requirement to maintain a "full course of study" at an approved institution. 8 C.F.R. § 214.3(g). If a student is not attending their school, for example, the school is required to report that fact, *see* 8 U.S.C. § 1372(a)(4), (c)(1)(C); 8 C.F.R. § 214.3(g), and the DSO will terminate the student's record in SEVIS.[4]

---

[3] If the intending student is already in the United States in another temporary status, then after being accepted into a SEVP-approved school, having the school complete the I-20, and paying the SEVIS fee, the student may apply to USCIS to change to F-1 status. *See* 8 C.F.R. § 248.1(c); *see also* 8 C.F.R. § 214.2(b)(7); USCIS Changing Status Site, *supra* n.1. If that student is approved for F-1 status by USCIS but at some point travels abroad during their studies, they will need to apply for an F-1 visa at a U.S. embassy or consulate in order to re-enter the United States and continue their studies. French Decl. ¶ 11.
[4] DHS Study in the United States, *SEVIS Help Hub: Terminate a Student* (last visited May 23, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student ("DHS SEVIS Termination Site").

### B. Termination of the SEVIS record.

A SEVIS record may be terminated when a student fails to maintain or loses their F-1 status. By regulation, this occurs in only two circumstances. *See Saxena v. Noem*, No. 5:25-CV-05035, 2025 WL 1413266, at *7 (D.S.D. May 15, 2025); *Parra Rodriguez*, 2025 WL 1284722, at *4-5; *Doe No. 1 v. Noem*, No. 25-CV-1962, 2025 WL 1224783, at *2 (E.D. Pa. Apr. 28, 2025).

First, F-1 students fail to maintain their status when they do not comply with the terms of that status. Maintaining F-1 status requires "pursu[ing] a full course of study" at an approved institution. 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f)(5)(i), (f)(6). Like other visa holders, students in F-1 status must also abide by the terms of their status by not engaging in unauthorized work, not giving false information, and not being convicted of certain crimes. 8 C.F.R. §§ 214.1(e)-(g). An F-1 student may remain in the United States for as long as they continue to meet the requirements of their visa. 8 C.F.R. § 214.2(f)(5); *see Saxena*, 2025 WL 1413266, at *1. Termination of a SEVIS record based on a failure to maintain F-1 status is generally done by a school's DSO, not by ICE. French Decl. ¶ 9; *see also* DHS SEVIS Termination Site.

Second, ICE may terminate a student's status in specific limited circumstances. This may occur (1) if a specific waiver of inadmissibility was granted but later revoked; (2) if a private bill is introduced that would confer permanent resident status on the noncitizen; or (3) if a notice is issued in the Federal Register revoking the status due to "national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 185 n.100; *Doe No. 1*, 2025 WL 1224783, at *2, *5.

Termination of student status is distinct from the revocation of a visa. A visa is a document that is used to travel to the United States and seek admission to the country at

5

a port of entry, but it does not determine whether someone remains in valid status once in the United States. *See Sultan v. Trump*, No. 25-CV-1121, 2025 WL 1207071, at *2 (D.D.C. Apr. 24, 2025) ("An F-1 visa controls a noncitizen student's entry into the United Sates, not their lawful status while in the country."); French Decl. ¶ 11. For example, an F-1 student's visa may expire or be terminated without any impact on their student status as reflected in SEVIS. Indeed, in 2010 ICE issued policy guidance acknowledging that a "[v]isa revocation is *not*, in itself, a cause for termination of the student's SEVIS record."[5]

## II. The March 25, 2025 termination of Ms. Öztürk's SEVIS record.

Ms. Öztürk began her PhD at Tufts University in February 2021. Garson Decl. Ex. 1. Her SEVIS record became "ACTIVE" on the day that she began her program and reflects that she continued to maintain her student status until March 25, 2025. *Id*.

At 7:32 p.m. on March 25, 2025—two hours after ICE arrested Ms. Öztürk—a user listed as "DHS Official" terminated her SEVIS record. Garson Decl. ¶ 3 & Exs. 1-2. SEVIS reflects that after this "Change of Student Status," the "Resulting Status" was listed as "TERMINATED." *Id*. Ex. 1. The termination reason was stated as "OTHERWISE FAILING TO MAINTAIN STATUS," and the explanation states that the action happened "Pursuant to Section 221(i) of the Immigration and Nationality Act, 8 U.S.C. 1201(i)"—a reference to a provision of immigration law regarding visa revocation. *See* Garson Decl. ¶¶ 3-5 & Exs. 1-2.

At 9:18 a.m. and/or 9:19am on March 26, a "DHS Official" altered the reason for the termination to "OTHERWISE FAILING TO MAINTAIN STATUS," without further

---

[5] ICE Policy Guidance 1004-04 – Visa Revocations 3 (June 7, 2010), https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf ("ICE 2010 Policy Guidance") (emphasis added).

details. *Id.* ¶ 8 & Exs. 1, 3. At 10:31am that morning, the SEVP program at ICE sent an email to Tufts University and to Ms. Öztürk (who was at that moment detained incommunicado en route to Louisiana). *Id.* ¶ 11. The email contained an attached "Termination Notice," addressed to Ms. Öztürk, which stated that her SEVIS designation was "Terminated pursuant to 237(a)(1)(C)(i) and/or 237(a)(4)(C)(i) of the Immigration and Nationality Act." *Id.* & Ex. 5. The former provision, 8 U.S.C. § 1227(a)(1)(C)(i), renders deportable a noncitizen who "has failed to maintain the nonimmigrant status in which the alien was admitted," whereas the latter, 8 U.S.C. § 1227(a)(4)(C)(i), renders deportable a noncitizen "whose presence or activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States . . . ."

On April 8, Ms. Öztürk's SEVIS record was again updated to reflect a third, new reason for termination. Garson Decl. ¶ 9 & Exs. 1, 4. Since that day, the reason for termination has been listed as "Other-Individual identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated." *Id.* ¶ 12 & Ex. 1.[6]

Ms. Öztürk's SEVIS record continues to be listed as "TERMINATED." *Id.* Ex. 1. Following the May 15 status conference in this case, counsel for the government confirmed that ICE will not voluntarily reactivate Ms. Öztürk's SEVIS record.

## ARGUMENT

Ms. Öztürk is entitled to a preliminary injunction because (1) she "is likely to succeed on the merits" of her claim that ICE unlawfully terminated her SEVIS record,

---

[6] It appears that on or around April 8, ICE began broadly using this termination reason. *See Liu v. Noem*, No. 25-CV-133, --- F. Supp. 3d ----, 2025 WL 1233892, at *4 (D.N.H. Apr. 29, 2025) (describing an April 8 change in the termination reason matching the change made in this case); Garson Decl. ¶ 10.

7

(2) she is "likely to suffer irreparable harm in the absence of preliminary relief," and (3) "the balance of equities tips in [her] favor, and . . . an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[7]

## I. Ms. Öztürk is likely to succeed on the merits of her claim that ICE unlawfully terminated her SEVIS record.

Ms. Öztürk is likely to succeed on the merits of her challenge to her SEVIS record termination on Administrative Procedure Act ("APA") and First Amendment grounds.

### A. The termination of Ms. Öztürk's SEVIS record is both not in accordance with law and arbitrary and capricious.

The termination of Ms. Öztürk's SEVIS record is a final agency action reviewable under the APA, *see* 5 U.S.C. § 704. *See Jie Fang*, 935 F.3d at 182-83.[8] And Ms. Öztürk is likely to succeed on the merits of her claim that the termination is both not in accordance with law and arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

*First*, the termination of Ms. Öztürk's SEVIS record was not in accordance with law because no permitted regulatory reasons for terminating a SEVIS record existed. *See Doe v. Trump*, No. 25-CV-03140, --- F. Supp. 3d. ----, 2025 WL 1467543, at *9 (N.D. Cal. May 22, 2025); *Doe No. 1*, 2025 WL 1224783, at *5. The three specific scenarios in which ICE may terminate an F-1 visa holder's status—the revocation of a waiver, the introduction of a private bill, or pursuant to a Federal Register notification—are not present here. 8 C.F.R. § 214.1(d). Ms. Öztürk did not need and thus did not receive any

---

[7] Ms. Öztürk requests a prohibitory preliminary injunction, not a mandatory injunction, because she asks this Court to "maintain[] the status quo" by "restor[ing] her SEVIS record . . . to 'the last peaceable uncontested status preceding the present controversy.'" *Parra Rodriguez*, 2025 WL 1284722, at *11 (quoting *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 105 (2d Cir. 2024)).

[8] *See also, e.g.*, *Parra Rodriguez*, 2025 WL 1284722, at *7 (holding termination of a SEVIS record isreviewable final agency action); *Doe v. Noem*, No. 3:25-CV-00023, 2025 WL 1161386, at *6 n.5 (W.D. Va. Apr. 21, 2025) (same); *Doe v. Noem*, No. 2:25-CV-00633, --- F. Supp. 3d ----, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025) (same).

waiver of inadmissibility to obtain a visa or gain admission to the United States; she is not the subject of any private bill; and DHS has not published a Federal Register notice.

In addition to these three specific scenarios, the only other permissible basis under the regulations for the termination of Ms. Öztürk's SEVIS record would be a failure to maintain a course of study or other failure to maintain her status. *See Parra Rodriguez*, 2025 WL 1284722, at \*4-5; *Doe No. 1*, 2025 WL 1224783, at \*5. But the records make clear that Ms. Öztürk was maintaining her status and continuing her course of study. *See* Garson Decl. Ex. 1. Nothing changed that could explain the termination of her SEVIS record on March 25 other than the government's decision to target and punish her for her speech.

Although ICE has at times cited revocation of Ms. Öztürk's visa by the Department of State as a basis in SEVIS for its termination of her record—although it did not do so in its March 26 communication purporting to notify Ms. Öztürk of the termination, *see* Garson Decl. Exs. 2-5—the revocation of a visa is not a basis for terminating a SEVIS record. *See* 8 C.F.R. § 214.1(d); ICE 2010 Policy Guidance.[9] Instead, § 214.1(d) provides the three specific reasons that a person who has maintained their status may have that status terminated. These reasons include the revocation of a discretionary *waiver* that some noncitizens may need in order to obtain a visa, *see* 8 U.S.C. § 1182(d), but they do *not* include the revocation of that visa itself. *See* 8 C.F.R. § 214.1(d). As numerous courts have found in recent weeks, ICE may not terminate

---

[9] On April 26, 2025, in an internal Broadcast Message that the government has submitted in some cases, ICE listed visa revocation as among the permissible bases for the termination of a SEVIS record. *See, e.g.*, *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1397007, at \*2 (W.D. Wash. May 14, 2025); French Decl. ¶ 16. But this document did not purport to overturn ICE's published guidance, *see* French Decl. ¶ 16, and, in any event, it is inconsistent with § 214.1(d) to the extent it purports to create authority to terminate SEVIS records on the basis of a visa revocation. *See Doe*, 2025 WL 1397007, at \*2 (the Broadcast Message "makes legal and factual claims that this Court and others have rejected").

9

SEVIS records unless a student has failed to maintain their status or a § 214.1(d) ground is present. *Parra Rodriguez*, 2025 WL 1284722, at *8 (collecting cases).

*Second*, the termination of Ms. Öztürk's SEVIS record was also arbitrary and capricious. Agency action is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). That test is amply satisfied here. ICE has offered a shifting set of explanations for why Ms. Öztürk's SEVIS record was terminated, Gerson Decl. ¶¶ 6-11 & Exs. 1-5, none of them valid or supported by the facts. ICE has failed to consider Ms. Öztürk's and Tufts University's reliance interests, ignored Ms. Öztürk's maintenance of her status, and acted out of retaliatory motives. The termination of Ms. Öztürk's SEVIS record is thus arbitrary and capricious. *See Doe No. 1*, 2025 WL 1224783, at *5.

> **B.    The termination of Ms. Öztürk's SEVIS record was retaliation for her protected speech, in violation of the First Amendment.**

Ms. Öztürk is also likely to succeed on the merits of her First Amendment challenge to the termination of her SEVIS record. To succeed on her First Amendment retaliation claim, Ms. Öztürk must show that: "(1) [she] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [her] exercise of that right; and (3) the defendant's actions caused [her] some injury." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (cleaned up); *see Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 (9th Cir. 2021). Just as this Court has already held that Ms. Öztürk

10

raised a substantial claim that her *detention* was unlawfully retaliatory—due to the unrebutted evidence that it was motivated by nothing other than her co-authorship of a 2024 op-ed concerning Israel's war in Gaza—she is likely to succeed on the merits of her claim that the *termination of her SEVIS record* is unlawfully retaliatory as well.

This Court has already acknowledged that Ms. Öztürk has protected First Amendment rights. ECF No. 104 at 53. Indeed, the speech at issue in this case is political speech that lies "'at the heart of First Amendment protection' and 'occupies the highest rung of the hierarchy of First Amendment values.'" *Ragbir v. Homan*, 923 F.3d 53, 70 (2d Cir. 2019) (cleaned up) (quoting *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011)), *cert. granted, remanded, and vacated sub nom. on other grounds*, *Pham v. Ragbir*, 141 S. Ct. 227 (2020)).

The Court has also acknowledged the strength of the evidence that retaliatory motivations for protected speech drove the government's actions against Ms. Öztürk. It observed with regard to Ms. Öztürk's detention that:

> The record before this Court shows that the only speech at issue is Ms. Ozturk's op-ed, and her arrest and detention clearly constitute adverse action. On April 18, the Court offered the government the opportunity to rebut Ms. Ozturk's evidence showing that her op-ed is the but-for cause of her detention. ECF No. 104 at 56-58. The government has not done so. Meanwhile, Ms. Ozturk has introduced significant evidence demonstrating the irregular nature of the government's actions. ECF No. 122 at 8. The Court therefore concluded that Ms. Ozturk has presented, at the very least, a substantial claim of a First Amendment violation.

ECF 140 at 17. The same is true of the government's adverse action to terminate Ms. Öztürk's SEVIS record—a separate, punitive measure taken by ICE that was distinct from and not required by the revocation of her visa. *See* French Decl. ¶¶ 11, 13. As this Court noted with regard to the government's decision to "terminate her status" and take other adverse actions against Ms. Öztürk, "the government has not provided anything

11

beyond Ms. Ozturk's political speech" in defense of its actions, ECF 140 at 21, and Ms. Öztürk is likely to be able to demonstrate that they were retaliatory.

Finally, the SEVIS termination injured and continues to injure Ms. Öztürk. Even after this Court ordered Ms. Öztürk to be released with the understanding that she would return to her life at Tufts, the government continues to impede her full reintegration into her academic community through its termination of her SEVIS record. Ms. Öztürk is thus likely to prevail on her First Amendment claim.

## II. Ms. Öztürk is likely to suffer irreparable harm if her SEVIS record is not restored.

Irreparable harm will result if Ms. Öztürk's SEVIS record is not promptly restored. As this Court noted, Ms. Öztürk is fully committed to and immersed in her academic life at Tufts University. May 9, 2025 Tr. 111:13-112:12. But if Ms. Öztürk's SEVIS record is not restored, Ms. Öztürk will suffer a "significant disruption" to her academic life. French Decl. ¶ 19.

Notably, if her SEVIS record is not reactivated, she will lose the opportunity for employment, including teaching, *id.*, and will therefore lose a source of financial support, *see* May 9, 2025 Tr. 39:5-15.[10] This inability to engage in employment consistent with F-1 status constitutes an irreparable harm. *Oruganti v. Noem*, No. 2:25-CV-00409, 2025 WL 1144560, at *4 (S.D. Ohio Apr. 18, 2025) (noting "on-campus employment . . . make[s] up Plaintiff's only source of income . . . because, as an F-1 visa

---

[10] At the May 9, 2025 hearing, the Court heard testimony that Ms. Öztürk had been previously scheduled to teach a summer course. *See* May 9, 2025 Tr. 39:9-12, 72:20-25. Ms. Öztürk and Tufts University have had to adjust these plans and now do not plan for Ms. Öztürk to teach that course. Nevertheless, Ms. Öztürk depends on other on-campus work opportunities and stipends to support herself financially during her graduate studies. *See id*. 39:5-15, 73:1-11.

12

holder, Plaintiff generally cannot work off-campus"); *see Doe 4 v. Lyons*, No. 2:25-CV-00708, 2025 WL 1208072, at *9 (W.D. Wash. Apr. 25, 2025).

On-campus work experiences are not only important for their financial value, but also as "an integral part of . . . doctoral training." *Oruganti*, 2025 WL 1144560, at *4. For example, as Ms. Öztürk's adviser testified, "teaching" is one of the "competencies" that Ms. Öztürk must satisfy as part of her studies. May 9, 2025 Tr. 68:18-69:10.

Moreover, SEVIS termination creates ongoing immigration consequences. SEVIS termination "triggers a negative impact even if the student did not engage in any activity that required termination and was not in violation of status" because "SEVIS is the sole location where comprehensive student status information is kept," and the "SEVIS record is assumed to accurately reflect whether a student maintains status." French Decl. ¶ 18. The failure to restore Ms. Öztürk's record and to cure gaps in that record adds uncertainty to her present situation and will impact her prospects for any future immigration benefits in the United States. *Id.* ¶ 20; *see Doe v. Noem*, No. 2:25-CV-00633, --- F. Supp. 3d ----, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025) (noting government "could not confirm or deny if they consider Plaintiff to currently be out of status" and finding irreparable harm in the face of uncertainty and concern that Plaintiff "may . . . be accruing unlawful presence as a result of the SEVIS revocation").[11]

### III. The balance of the equities tips in Ms. Öztürk's favor, and an injunction is in the public interest.

The final two preliminary injunction factors, which merge when the government is the opposing party, also favor preliminary injunctive relief in this case. *See New York*

---

[11] *See also Doe*, 2025 WL 1467543, at *7 (finding gap and uncertainty in record created irreparable harm even where, unlike in Ms. Öztürk's, record had been reactivated); *Parra Rodriguez*, 2025 WL 1284722, at *10 (finding even after reactivation of SEVIS record that 17-day gap was irreparable harm warranting preliminary injunctive relief).

13

*v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 59 (2d Cir. 2020). While Ms. Öztürk suffers concrete harms from not having her SEVIS record restored, the government has no legitimate interest in continuing to punish her through the unlawful and retaliatory termination of that status, and the public interest disfavors permitting these unlawful and retaliatory actions against Ms. Öztürk to continue. To the contrary, "there is substantial public interest in ensuring government agencies abide by federal laws and regulations." *Parra Rodriguez*, 2025 WL 1284722, at *10 (granting preliminary injunction requiring restoration of SEVIS record as of date of termination).

Prior rulings in this case confirm that the balance of the equities favors injunctive relief. First, this Court has recognized the "extraordinary" nature of the government's efforts to target Ms. Öztürk for her speech, which included terminating her student status. ECF 140 at 21. It held that the "nature and strength of Ms. Ozturk's constitutional claims" were among the "extraordinary circumstances" supporting her release *pendente lite*. *Id.* at 27. That the government's only basis for acting against Ms. Öztürk is her protected speech further underscores the public interest in providing her timely relief from the unlawful and retaliatory termination of her SEVIS record.

Second, prior rulings in this case have recognized that the harms of allowing the government's conduct to continue pending litigation fall entirely on Ms. Öztürk. As the Second Circuit noted in denying a stay pending appeal of this Court's transfer order, "[f]aced with such a conflict between the government's unspecific financial and administrative concerns on the one hand, and the risk of substantial constitutional harm to Öztürk on the other, we have little difficulty concluding that the balance of hardships tips decidedly in her favor." *Ozturk v. Hyde*, No. 25-1019, --- F.4th ---, 2025 WL 1318154, at *14 (2d Cir. May 7, 2025) (cleaned up). Like the transfer order, an order

14

requiring reinstating Ms. Öztürk's SEVIS record would have "no impact on the government's separate removal proceedings against her in immigration court," ECF 109 at 4, or on any legitimate government interest. Although "the executive branch assuredly has an interest in effectuating statutes enacted by the legislative branch, the judicial branch is charged with ensuring that the other branches do so in comport with the laws and the Constitution." *Id.* Here, once again, the balance of the equities and the public interest decidedly favor granting the preliminary injunctive relief necessary to allow Ms. Öztürk's full participation in her academic career.

## CONCLUSION

For the foregoing reasons, this Court should grant preliminary injunctive relief that requires the government to reactivate Ms. Öztürk's SEVIS record and to restore it from the termination date to avoid any gaps in the record.[12]

/s/ Monica Allard
Lia Ernst
Hillary Rich
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601
(802) 223-6304
mallard@acluvt.org
lernst@acluvt.org
hrich@acluvt.org

*Counsel for Petitioner*
Dated: May 23, 2025

Jessie J. Rossman*
Adriana Lafaille*
Rachel E. Davidson*
Julian Bava*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850

---

[12] Particularly given the government's shifting positions with regards to students' SEVIS records, *see, e.g.*, *Doe*, 2025 WL 1467543, at *4-5, *7, Ms. Öztürk reserves the right to seek additional or different relief relating to her SEVIS record and/or student status at a future date.

15

Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org
rdavidson@aclum.org
jbava@aclum.org

Mahsa Khanbabai*
115 Main Street, Suite 1B
North Easton, MA 02356
(508) 297-2065
mahsa@mk-immigration.com

Brian Hauss*
Esha Bhandari*
Brett Max Kaufman*
Michael K. T. Tan*
Noor Zafar*
Sidra Mahfooz*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
bhauss@aclu.org
ebhandari@aclu.org
bkaufman@aclu.org
m.tan@aclu.org
nzafar@aclu.org
smahfooz@aclu.org

Ramzi Kassem*
Naz Ahmad*
Mudassar Toppa*
Shezza Abboushi Dallal*
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Matthew D. Brinckerhoff*

16

Katherine Rosenfeld*
Vasudha Talla*
Sonya Levitova*
EMERY CELLI BRINCKERHOFF ABADY WARD &
MAAZEL LLP
One Rockefeller Plaza, 8th Floor
New York, NY 10020
212-763-5000
mbrinckerhoff@ecbawm.com
krosenfeld@ecbawm.com
vtalla@ecbawm.com
slevitova@ecbawm.com

*Admitted pro hac vice*