## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

RÜMEYSA ÖZTÜRK,

*Plaintiff,*

v.

DONALD J. TRUMP, *et al.*,

*Defendants.*

Case No. 2:25-cv-00374

## Declaration of Dahlia M. French, Esq.

I, Dahlia M. French, declare the following under pain and penalty of perjury:

1.  I am over 18 years of age and am fully competent to make this declaration. I have over 25 years of experience as a licensed immigration attorney. I earned my Juris Doctor in 1993, received bar admission in Connecticut (1993) and Ohio (1994) and have practiced immigration and international tax law since 1994. I am also admitted in the US Tax Court and the Federal District Court for the District of Northern Indiana.

2.  Since obtaining my license in December of 1993, I have specialized in immigration law, and specifically in academic immigration. I have been a member of the American Immigration Lawyers Association ("AILA") since January of 1998. As a member of AILA, I have served in various volunteer positions, including providing guidance to members on academic immigration issues, through practice advisories, speaking engagements, book chapter contributions, and answering direct questions on listservs. I am currently Managing Attorney in the law firm, French Legal.

3.      I have been an active member of NAFSA: Association of International Educators, the most prominent national, professional organization for international student and scholar advisors for over 20 years. My activities with NAFSA include trainings, and guidance to members on academic immigration issues, through workshops, trainings, speaking engagements, and answering direct questions on listservs.

4.      I practiced in private law from 1993 to 2005, then transitioned to in-house immigration roles at the University of Virginia, Vanderbilt University, and Texas Tech University Health Sciences Center, from 2005 to 2021. With 16 years leading immigration offices in higher education, I've served as a Designated School Official (DSO), Alternate Responsible Officer (ARO), and Responsible Officer (RO). My immigration law practice focuses on academic, medical, business, and family immigration, with expertise in F-1, J-1, and M-1 visa categories, their derivatives, and institutional sponsorship obligations — including detailed knowledge of the F-1 international student program, the Student & Exchange Visitor Information System (SEVIS), and the laws, regulations, and legal guidance related to SEVIS and international students in F-1 status.

5.      I am a sought-after speaker at immigration webinars and conferences, provide expert advice and mentorship to colleagues, and have authored book chapters, journal articles, and practice advisories on academic immigration matters. I am considered a subject matter expert on academic immigration and issues affecting individuals in F-1, J-1, or M-1 status and the J-1 Exchange Visitor program.

6.      F-1 nonimmigrant student status is available to noncitizens who pursue a course of study at an approved educational institution. An F-1 visa may be issued a U.S.

2

consulate to a student who has been accepted at a US college or university. The visa is issued in order to permit their travel to the United States. Once admitted at a U.S. port of entry, by US Customs and Border Protection (CBP), the student is issued an I-94 entry document as proof of lawful entry and status in the USA. The F-1 student reports to their school to and begin their academic program. The F-1 student must then fulfill certain requirements in order to maintain F-1 status.

7.      To maintain status, F-1 students must follow specific requirements including: maintaining a full-time course load each semester, except when a reduced courseload is permitted; refraining from any unauthorized employment and only participating in authorized employment whether on-campus or off-campus; reporting to the DSO before taking any actions that affect the SEVIS record such as dropping to part-time status, taking medical leave, withdrawing from the program, and participating in academic internships; reporting to the DSO at the start of each session or semester or using whatever method the DSO requires to confirm enrollment each semester. *See* 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. §§ 214.1(e)-(g), 214.2(f).

8.      F-1 student status continues as long as the nonimmigrant continues to study in the USA and complies with the terms of their status. 8 C.F.R. § 214.1(f)(5). This is reflected on the entry record (the I-94) that an F-1 student receives when they are admitted into the country at a port of entry. Whereas, for example, the I-94 issued to someone entering the country on a tourist visa will contain a fixed end date by which they must leave the United States (typically six months after admission), an F-1 student's I-94 will have a "Duration of Status" or "D/S" annotation rather than a fixed end date. F-1 duration of status includes the periods in which the student is enrolled in school and maintaining status prior to receiving their degree, in addition to any periods of approved

3

post-degree completion employment authorization, *see* 8 C.F.R. § 214.2(f)(10)-(12) (allowing for post-degree practical training).

9.      When a violation of status occurs, the DSO terminates the SEVIS record. I know of no situation where ICE terminated the SEVIS record instead of the DSO, except in the last two months.

10.      US consulates have limited authority to revoke visas, including F-1 visas, and generally should provide notice prior to doing so. *See* 9 FAM 403.11-3(A)-(B) & 403.11-4(A)(1). The Department of State has given particular attention to situations in which someone is charged with a driving under the influence offense, 9 FAM 403.11-3(A)(4), 403.11-3(B), 403.11-5(B)(c). Prior to 2025, driving under the influence was the only scenario in which F-1 visa revocation commonly occured. In my experience and to my knowledge, prior to 2025, consulates never revoked an F-1 visa for any other misdemeanor offenses or for other derogatory reasons.

11.      F-1 visas and F-1 status are distinct. The purpose of a visa is to permit travel to the United States. An F-1 visa may expire while a student is in the United States in F-1 status, and the expiration of the visa does not impact their status. It only requires them to apply for and obtain a new visa the next time they travel abroad, in order to re-enter the United States. Sometimes a student changes status from another valid status to F-1 status while in the United States, and when that occurs, the student will have F-1 status but no F-1 visa. When that student travels outside the United States, they will then need to apply for an F-1 visa at the U.S. Embassy in order to return to the United States.

12.      When a visa is revoked while someone is outside the United States, they will be unable to travel to the Untied States unless they apply for and obtain another visa. Visas may also be revoked while a noncitizen is inside the United States in very limited

4

situations. *See* 9 FAM 403.11-3(B)(b). When that occurs, if the noncitizen leaves the United States, they will be unable to return without being granted a new visa.

13.    The revocation of a visa does not itself impact status in the United States. Both the Department of State and ICE have acknowledged that visa revocation has no effect on status.[1] ICE's 2010 guidance, for example, clearly states that even after visa revocation an F-1 student maintains status, and the agency will contact the DSO to confirm the student is maintaining status. Those statements are correct and F-1 students and their sponsoring schools have relied on them to provide guidance to students with visa revocations.

14.    I know of no time, before 2025, that a visa revocation, even if done due a driving under the influence arrest or conviction, *see* 9 FAM 403.11-5(B)(c), led to termination of a SEVIS record. While the revocation of a visa has also been a deportability ground since 2004, I also know of no time before 2025 in which ICE relied on the revocation of a visa to detain someone or to put them into removal proceedings.

15.    SEVIS is a record system used to monitor students in F-1 and M-1 status, as well as their dependent family members. SEVIS records are meant to accurately reflect whether a student is maintaining student status, although mistakes do occur.

16.    I am aware of no time prior to 2025 when ICE terminated a SEVIS record solely due to visa revocation. This is because, by its own 2010 guidance, ICE knows that visa revocation does not equate to a loss of status or trigger SEVIS record termination,

---

[1] ICE/SEVP Policy Guidance 1004-04-Visa Revocations (June 7, 2010), https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf; U.S. Dept. of State Bureau of Educational and Cultural Affairs, Private Exchange Sector, Guidance Directive 2016-03: 9 FAM 403.11-3 – VISA REVOCATION (Sectember 2, 2016), https://www.aila.org/dos-guidance-directive-2016-03-on-visa-revocation.

and termination of a SEVIS record on grounds of a visa revocation is improper. While on April 26, 2025, ICE sent an internal broadcast message listing visa revocation as among the potential bases for SEVIS termination, this internal email does not supercede the agency's guidance, which the agency has not rescinded. The agency has also not revised its public-facing information on the Study in the States website.[2]

17.    The reasons to terminate a SEVIS record are clearly articulated in SEVIS guidance and regulations.[3] Termination of a SEVIS record is appropriate when a student fails to maintain status, such as by not attending classes, by working in a manner not authorized by their status, by providing false information, or by engaging in criminal activity. 8 C.F.R. §§ 214.1(e)-(g), 214.2(f). Termination of a SEVIS record is also appropriate if a student's status has been terminated due to the reasons enumerated in 8 C.F.R. § 214.1(d), which include the circumstance where a waiver was granted in order to allow the student's admission and the waiver has been revoked. The terminations were conducted by the university in these situations, not ICE/DHS.

18.    Termination of a SEVIS record—unless the reason for termination is that the student has become a lawful permanent resident or changed to another status—has serious consequences for the international student. Termination (except due to adjustment or change to another status) negatively impacts academic engagement and benefits, and future immigration status. A SEVIS record is assumed to accurately reflect

---

[2] SEVIS Termination Reasons, SEVP-Only Termination Reasons, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons.
[3] Ibid. See also 8 C.F.R. 214.2(f)(5)(i)-(iv) where "Duration of Status" is defined: *the time during which an F-1 student is pursuing a full course of study at an educational institution approved by the Service for attendance by foreign students, or engaging in authorized practical training following completion of studies.* Duration of status continues through change in educational levels, school breaks and holidays, and for a 60-day period after academic studies and any post-graduation authorized practical training is completed.

whether a student maintains status, because the SEVIS is the sole location where comprehensive student status information is kept. Therefore, a SEVIS record termination (other than when it is due to an adjustment or change in status) always triggers a negative impact even if the student did not engage in any activity that required termination and was not in violation of status, and even if the termination was due to mistakes by a third party or government agency.

19.    SEVIS record terminations (other than when they are due to adjustment or change to another status) are always a significant disruption to a student's academic program and progress. For example, students whose SEVIS record has been terminated are immediately unable to work in any on-campus and off-campus employment (including internships, mandatory clinical rotations, graduate research or teaching assistantships).  In addition to the immediate loss of employment, additional negative consequences of SEVIS record terminations also include, but are not limited to, suspension of continued study at institutions that do not enroll undocumented students; loss of continued scholarship and grants, if those funds are tied to maintenance of F-1 status; and the potential inability to renew driver's licenses or state ID cards, because state databases use a federal verification system that confirms the SEVIS record is in Active status.

20.    A SEVIS record termination (other than when it is due to adjustment or change to another status) also negatively affects a student's ability to obtain future immigration benefits. A violation of status must always be reported on a U.S. consulate visa application and on USCIS applications for immigration benefits. Students with a violation of status do not qualify for the U.S. visa waiver program, may be denied a visa, may be denied admission at a U.S. port of entry even with a visa, may be required to file

a nonimmigrant visa waiver application or to remain outside the U.S. for a number of years before being issued another visa. A violation of status even becomes a factor in the adjudication of future requests for permanent residence status.

21.    I am not a party to this action or proceeding. I am aware of the facts stated herein of my own knowledge, and, if called to testify, I could and would competently so testify.

Executed on May 23, 2025, in Lubbock, TX.


_____
Dahlia M. French, Esq.