UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| RUMEYSA OZTURK,<br><br>　　　　　　　　　Petitioner,<br><br>　　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement, and KRISTI NOEM, Secretary of Homeland Security; and MARCO RUBIO, in his official capacity as Secretary of State<br><br>　　　　　　　　　Respondents. | No. 2:25-cv-374 |

**RESPONDENTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF RESTORING MS. OZTURK'S SEVIS RECORD
AND
MOTION TO DISMISS SEVIS CLAIM FOR IMPROPER VENUE AND LACK OF JURISDICTION**

　　The Court should deny Petitioner's Motion seeking a preliminary injunction requiring the restoration of her Student Exchange and Visitor Information System ("SEVIS") record (ECF No. 145). She cannot meet the standard for the issuance of a preliminary injunction for the following reasons:

- The requested relief is beyond the scope of a petition for habeas corpus;

- This Court is not the proper venue for adjudicating a non-habeas challenge to the termination of Petitioner's SEVIS record;

- The Immigration and Nationality Act ("INA") strips the Court of jurisdiction to consider the SEVIS challenge;

1

- The claim is barred by the Privacy Act; and

- The Department of Homeland Security has a rational basis for the termination of Petitioner's SEVIS record because she is subject to removal proceedings.

In addition, as explained below, the Court should dismiss Petitioner's SEVIS claim based on improper venue and the absence of subject matter jurisdiction.

## PROCEDURAL BACKGROUND

The original and amended petitions for a writ of habeas corpus (ECF Nos. 1 & 12) were filed in the United States District Court for the District of Massachusetts, where Ozturk lived before her arrest and where she now again lives. The amended petition, ECF No. 12, sought habeas relief principally by challenging the legality of Ozturk's arrest and detention. In its prayer for relief, in addition to asking the Court to order Ozturk's release, the Amended Petition also requested the Court "Restore Petitioner's SEVIS record."

On April 4, 2025, United States District Judge Denise J. Casper of the District of Massachusetts, after reviewing the bases for Ozturk's challenges to her arrest and detention, ordered the case transferred to the District of Vermont. ECF No. 42. Judge Casper's ruling construed Ozturk's filing only as a challenge to Ozturk's arrest and detention, and did not address the appropriate venue for Ozturk's other claims for relief.

On April 18, this Court concluded that it had habeas jurisdiction over Ozturk's challenge to her detention, and directed that she be transferred to Vermont. ECF No. 104. *See Ozturk v. Trump,* 2025 WL 1145250 (D.Vt. April 18, 2025). While the Court observed that Ozturk sought reinstatement of her SEVIS record, *id.* at *12, its jurisdictional analysis focused exclusively on the question of habeas jurisdiction. Indeed, the Court seemed to agree with the government's position that Ozturk's SEVIS record was unrelated to her detention. *Id.* n.3. Similarly, on May 7

when the United States Court of Appeals for the Second Circuit denied the government's motion to stay this Court's order pending appeal, that Court focused only on Ozturk's challenge to her detention. *See Ozturk v. Hyde,* 136 F.4th 382 (2d Cir. 2025).

Following the Second Circuit's ruling, after hearing testimony on May 9, this Court ordered that Ozturk be released pending final resolution of her habeas petition. ECF Nos. 130 & 131. In its subsequent written ruling, the Court noted that the evidence before the Court included that "[g]oing forward, the Dean of the Graduate School of Arts and Sciences at Tufts informs the Court that Ms. Ozturk will have several sources of income this coming summer as a result of her teaching and research and that the University will be able to provide her with housing." ECF No. 140, at 10.

The government continues to pursue its interlocutory appeal of the April 18 decision of this Court. In the meantime, this Court has directed Petitioner to submit briefing relating to discovery on or before June 14, 2025. *See* ECF No. 139.

## PETITIONER'S MOTION

Ozturk filed the instant motion on May 23 seeking a preliminary injunction requiring the government to reactivate her SEVIS and reserves the right to seek additional or different relief relating to her SEVIS record at a future date. ECF No. 145, at 15. The Motion argues that ICE should be required to reinstate her SEVIS record, arguing that its termination violated the APA and her constitutional rights. It further alleges, without additional explanation, that without having the SEVIS record restored, Ozturk will be harmed because without it her "full integration into her academic community" will be impeded. *Id.* at 12. She also asserts that without reactivation of her SEVIS record she will "lose the opportunity for employment, including teaching." *Id.* She also

3

alleges that failure to restore her SEVIS record "adds uncertainty to her present situation and will impact her prospects for any future immigration benefits in the United States." *Id.* at 13.

She does not contend, however, that her SEVIS record has any effect on whether she is detained or remains released.

## BACKGROUND INFORMATION ABOUT SEVIS

The INA allows for the entry of "a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). To be admitted in F-1 status, an applicant must present a certificate of eligibility issued by a certified school in the student's name; present documentary evidence of financial support; demonstrate he or she intends to attend the school specified on the visa; and, if the student attends a public secondary school, demonstrate that he or she has reimbursed the local educational agency administering the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, an alien must "pursue a full course of study" or "engage in authorized practical training[.]" *Id.* § 214.2(f)(5)(i).

"Optional Practical Training" ("OPT") must be "directly related to [a student's] major area of study" in order to qualify as authorized training. 8 C.F.R. § 214.2(f)(10). OPT allows eligible students to obtain temporary employment that is directly related to that student's major area of study. *Id.* § 214.2(f)(10)(ii). Students in an F-1 status, who received a science, technology, engineering, or mathematics ("STEM") degree may extend participation in the OPT program for

4

up to an additional two years. *Id.* § 214.2(f)(10)(ii)(C). OPT can occur while a student is in school, during breaks, or after a student has completed his or her course of study. 8 C.F.R. § 214.2(f)(10)(ii)(A)(1)-(3). While in school, a student's status is based on that student pursuing a degree and need not be routinely renewed. *Id.* § 214.2(f)(7). For post-degree OPT, there are limits on how long an individual can be unemployed. In particular, those in F-1 status may not accrue more than ninety days of unemployment unless granted a twenty-four-month STEM OPT extension, in which case they may not accrue more than a total of 150 days of unemployment. *Id.* § 214.2(f)(10)(ii)(E). Periods of unemployment longer than those authorized by regulation may be considered a failure to maintain status. *Id.*

Congress required that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372 (a)(1).

In exercise of this authority, the Secretary of Homeland Security created and maintains SEVIS, "a web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." ICE, *Student and Exchange Visitor Information System Overview*, https://perma.cc/93RQ-WVLJ (pinned May 5, 2025).

5

Importantly, a SEVIS record does not necessarily indicate a termination of nonimmigrant status. DHS, *SEVIS: Terminate a Student*, https://perma.cc/E9C2-9GR5 (pinned Apr. 28, 2025) ("[T]ermination is not always negative. [School officials] can terminate records for several normal, administrative reasons."). Under the INA, in this context there are three separate and distinct concepts: (1) SEVIS, which is a recordkeeping system used by the Department to maintain information on certain noncitizens who come to the United States to study, *see* ICE, *SEVIS Overview*, https://perma.cc/93RQ-WVLJ; (2) a visa, which is document issued by the State Department reflecting permission to apply for admission to the United States at a port of entry, *see* State Dep't, *Visitor Visa*, https://perma.cc/HN23-H3DK (pinned Apr. 28, 2025); and (3) immigration status, a noncitizen's formal immigration classification in the United States, *see* DHS, Maintaining Status, https://perma.cc/AM9P-LETR (pinned Apr. 28, 2025). Terminating a SEVIS record only terminates the first of these; it does not, in-and-of-itself, terminate immigration status or revoke a visa.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such a request involves the exercise of a far-reaching power that "should be sparingly exercised." *Dorfmann v. Boozer,* 414 F.2d 1168, 1173 (D.C. Cir. 1969) (citation omitted). "*Winter* instructs that '[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *New York v. Dep't of Homeland Sec.,* 969 F.3d 42, 58 (2d Cir. 2020) (quoting *Winter*, 555 U.S. at 20). "Where, as here, the government is a party

6

to the suit, the final two factors merge." *Id.* at 58-59. The moving party must demonstrate all of the factors by "a clear showing." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997).

## ARGUMENT

Ozturk cannot meet the standard for injunctive relief. As shown below, she is not likely to prevail on the merits because the SEVIS claim is not properly before this Court and is barred by both the Privacy Act and the jurisdiction-stripping provisions of the INA. Furthermore, ICE has a rational basis for terminating the record. And her motion also fails to establish irreparable harm.

### Petitioner's Requested Relief is Beyond the Scope of Habeas.

This Court is adjudicating Ozturk's habeas claim, which is a challenge to the legality of her detention. Now she requests this Court require ICE to make entries about her in a record-keeping system. Such relief does not sound in habeas, and the Court should dismiss the SEVIS claim as outside the scope of habeas relief.

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The writ of habeas corpus and its protections are "strongest" when reviewing "the legality of Executive detention." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001). Therefore, the traditional function of the writ is to seek one's release from unlawful detention. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973)). Clearly, Ozturk originally sought "simple release," which is a viable habeas claim, but she now impermissibly seeks more. *See Thuraissigiam,* 591 U.S. at 119 ("Claims so far outside the core of habeas may not be pursued through habeas.") (internal quotations and citations omitted).

Ordering DHS/ICE to make entries in SEVIS has nothing to do with Ozturk's detention or release. As the Supreme Court recognized, relief ordered in habeas proceedings and the collateral consequences of that relief "are two entirely different things." *Thuraissigiam,* 591 U.S. at 124. The Court specifically mentioned that "while the release of an alien may give the alien the opportunity to remain in the country if the immigration laws permit," it did not construe the writ to be a mechanism for otherwise directing the operation of the immigration laws. *Id.* at 125.

This Court's order releasing Ozturk (albeit on bail) comports with traditional habeas relief. The injunctive relief she now seeks goes beyond that. Indeed, no case cited in her motion appears to assert habeas as the basis for a SEVIS-related challenge. The oddity of Ozturk's request is amplified because the appropriate relief for an APA violation is generally vacatur of the decision and a remand to the agency for further consideration. *See Brezler v. Mills*, 220 F. Supp. 3d 303, 334 n.20 (E.D.N.Y. 2016) (citing *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013)); *see also MCPC, Inc. v. NLRB*, 813 F.3d 475, 490 (3d Cir. 2016); *Neto v. Thompson*, 506 F. Supp. 3d 239, 254 (D.N.J. 2020). If the Court accepted Ozturk's theory that the SEVIS termination has some causal connection with detention such that it can be pursued through habeas, then ruling in Ozturk's favor would at most vacate the agency's termination decision but would have no impact on the detention issue. Hence, this case would no longer about release from restraint, which is what habeas is meant to protect. *See Thuraissigiam*, 591 U.S. at 121 (citing cases).

Therefore, this Court should decline to extend the writ beyond established precedent and not entertain relief other than release from custody.

This Court should decline to extend the writ beyond established precedent and not entertain relief other than release from custody.

**This Court is Not the Proper Venue to Consider Petitioner's Non-Habeas SEVIS Claim and That Claim Should be Dismissed for Improper Venue.**

Apparently recognizing that the SEVIS-specific relief she seeks is beyond the scope of a habeas petition, Petitioner frames her argument principally under the Administrative Procedures Act and the First Amendment. *See* ECF No. at 8-12. But this Court is not the proper venue for such claims.

Unlike habeas jurisdiction, venue for other claims against the government is generally governed by 28 U.S.C. § 1391(e)(1). That statute provides: "A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity . . . may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."

Here, none of the respondents reside in Vermont, indeed "[f]or venue purposes, a federal official resides 'where his or her official duties are performed.'" *Chen v. Sessions,* 321 F.Supp.3d 332, 336 (E.D.N.Y 2018); *see also Reuben H. Donnelley Corp. v. F.T.C.,* 580 F.2d 264, 266 n. 3 (7th Cir. 1978) ("[t]o hold that a federal agency can be sued ... wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous"); *Hartke v. Federal Aviation Administration,* 369 F.Supp. 741, 746 (E.D.N.Y. 1973) ("The residence of a public official sued in his official capacity is his official residence; that is, the place where his office is maintained.")

9

Furthermore, Petitioner does not suggest that anyone in Vermont had anything to do with the treatment of her SEVIS record. And Ozturk does not reside in this district. Indeed, because she is a non-immigrant she "does not legally reside in any judicial district for purposes of venue." *See Topsnik v. United States*, 12 F. Supp. 3d 1, 3 n.2 (D.D.C. 2013); *Dang v. Jaddou,* 2024 WL 2501871, at *4 (C.D. Cal. February 16, 2024) (same). It is therefore clear that this Court is not the proper venue to resolve Ozturk's claims involving her SEVIS record.[1]

To be sure, this Court has accepted *habeas* jurisdiction. But in doing so, the Court analyzed the idiosyncrasies of habeas venue. It did not consider whether it has venue to consider other forms of relief, including whether this court is the proper venue to consider Ozturk's non-habeas SEVIS claim and the APA. *Cf. Chavez v. HUD,* 2025 WL 445682 (S.D.N.Y. Jan. 24, 2025) (district court analyzed venue for FTCA claim separately from venue for APA and Rehabilitation Act claims, given different statutory standards).

Under these circumstances, this Court should dismiss Ozturk's SEVIS-specific claims for lack of venue. *See, e.g., Liu v. Noem,* 2025WL1141023, at *4 (S.D. Ind. April 17, 2025) (requiring plaintiffs residing outside the district to show cause why their claims should not be dismissed without prejudice for lack of venue); *Chen v. Sessions,* 321 F.Supp.3d 332, 336 (E.D.N.Y 2018) (dismissal of mandamus petition for lack of venue when none of § 1391(e)(1)'s bases for venue were present).[2]

---

[1] In her Amended Petition, ECF No. 12, Ozturk explained why Massachusetts was the proper venue for this case. *See id.* ¶ 7.

[2] Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Because Ozturk is in the United States only temporarily, it is unclear if the District of Massachusetts is the right venue for Ozturk's non-habeas claim. *See Topsnik v. United States*, 12 F. Supp. 3d 1, 3 n.2

**Aside from Venue, this Court Lacks Jurisdiction to Address Ozturk's SEVIS claim.**

This Court previously rejected Respondent's arguments that it lacks jurisdiction over this action because of various jurisdiction stripping provisions of the INA. ECF No. 104. (The government is continuing its interlocutory appeal from the Court's jurisdictional ruling.) Much of the Court's rejection of respondents's jurisdictional arguments depended upon the Court treating the petitioner's challenge to her detention as distinct from a challenge to her removal proceedings. *Ozturk v. Trump,* 2025WL1145250, at *14 ("The Court is considering a habeas challenge to discretionary detention.") As the instant motion makes clear, the treatment of Ozturk's SEVIS record is clearly connected to the revocation of her visa and the initiation of her removal proceedings, and is not related to her detention. ECF No. 145, at 6-7.

As a result, all of respondent's previous INA-based jurisdictional arguments continue to apply to the SEVIS challenge because the record demonstrates ICE's termination of Ozturk's SEVIS record was in contemplation of the fact that she was removable, and removal proceedings have commenced. The termination of Ozturk's SEVIS record in these circumstances is outside of the Court's jurisdiction under 8 U.S.C. § 1252, which states that a petition for review following removal proceedings "shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Further, the "'zipper' clause" consolidates judicial review of all claims connected to removal proceedings and actions into the petition-for-review mechanism. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). This zipper clause says that "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final

---

(D.D.C. 2013) ("[T]he plaintiff is a nonresident alien, and thus he does not legally reside in any judicial district.")

order under this section." 8 U.S.C. § 1252(b)(9). Furthermore, "no court shall have jurisdiction . . . by any . . . provision of law (statutory or nonstatutory), to review . . . such questions of law or fact." *Id.*.

In other words, the termination of Ozturk's SEVIS record presents questions "arising from [an] action taken . . . to remove" her and therefore falls within the zipper clause that channels review away from this Court to a petition for review. 8 U.S.C. § 1252(b)(9). To be sure, not every termination of a SEVIS record indicates that the subject nonimmigrant is removable; indeed, the termination of a SEVIS record is not necessarily negative at all. But in this case, it is clear from the circumstances surrounding ICE's termination of Ozturk's SEVIS record that this termination arises from Ozturk's removability and contemplated removal. On March 21, 2025, the Department of State (DOS or State Department) notified ICE that the DOS Bureau of Consular Affairs had revoked Ozturk's nonimmigrant visa "effective immediately" because she had "been involved in associations that 'may undermine U.S. foreign policy by creating a hostile environment for Jewish students and indicating support for a designated terrorist organization' including co-authoring an op-ed that found common cause with an organization that was later temporarily banned from campus.". ECF No. 91-1 (State Department Memo for ICE). The Department of State may revoke visas in this manner "at any time, in [its] discretion." 8 U.S.C. § 1201(i). This revocation of Ozturk's visa rendered Ozturk "deportable" from the United States. 8 U.S.C. § 1227(a)(1)(B). And it is precisely because such a visa revocation is a "basis for removability" that ICE "may terminate the nonimmigrant's SEVIS record based on the visa revocation" in these circumstances. *See* April 26, 2025, Broadcast Message to All SEVP Personnel re SEVIS Notice – Policy Regarding Termination of Records, Exhibit A, hereto, at 2 (explaining that upon a visa revocation under 8 U.S.C. § 1201(i) that is "effective immediately" – as was Ozturk's – "SEVP may terminate the

12

nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under [8 U.S.C. § 1227(a)(1)(B)]"); *see also Parra Rodriquez,* 2015WL1284722, at *8 (attaching Broadcast Message to court's order as Exhibit C).

Ozturk's SEVIS record was terminated concurrent with efforts by ICE agents to initiate removal proceedings the actual initiation of removal proceedings. It was therefore a "removal-related activity" that falls within the zipper clause. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir 2016).

To be sure, the Second Circuit recently observed in this context that "overlap, even substantial overlap, does not make one claim arise out of the other, or necessitate that one claim controls the outcome of the other." *Ozturk v. Hyde,* 136 F.4th 382, 400 (2d Cir. 2025). But the fact that ICE policy connects the basis for the termination of Ozturk's SEVIS record to a removable-rendering event (the revocation of a visa), added to the fact that the SEVIS termination here occurred concurrent with operational efforts to initiate removal proceedings, and was followed by actual removal proceedings, demonstrates that in this instance that the SEVIS termination was a part of—not remote to—actions to remove Ozturk from the United States. A challenge to the SEVIS termination – which flowed directly from the visa revocation and resulting initiation of removal proceedings – invites the Court to review that which Congress has said it should not review. Ozturk may litigate her deportability (and visa revocation if that is the sole basis for her removal) through the administrative removal process and ultimately with the appropriate court of appeals through a petition for review. 8 U.S.C. §§ 1252(a)(2)(D), (a)(5), and (b)(9). This Court, however, lacks jurisdiction to hear them. Ozturk is therefore unlikely to succeed on the merits.

Ozturk does not challenge the revocation of her visa. Even if she did, judicial review of visa revocations is expressly foreclosed by statute. 8 U.S.C. § 1201(i) ("There shall be no means

13

of judicial review . . . of a revocation under this subsection."). *See Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 1004 (9th Cir. 2012). Moreover, Ozturk does not contest that the State Department's revocation of her visa was "effective immediately. It is that immediately effective visa revocation and its consequences for Ozturk's removability—none of which Ozturk contests—that led to ICE's decision to terminate her SEVIS record. *See* Exhibit A, hereto.

**The Privacy Act Also Bars Ozturk's Request to Adjust Her SEVIS Record.**

It is well established that "absent a clear and unequivocal waiver of sovereign immunity," the "United States and its agencies are generally immune from suit in federal court." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). Although the APA provides a limited waiver of the government's sovereign immunity for suits challenging final agency action and "seeking relief other than money damages," it does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. That carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

The Privacy Act of 1974, 5 U.S.C. § 552a, limits Ozturk's ability to seek the relief she is now seeking. The Act establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. See Pub. L. 93 579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes)). The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. 5 U.S.C. § 552a. A system of records is defined as a group of records under the control of an agency from which information is retrieved

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. *Id.* § 552a(d)(1)-(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of § 552a(g)(1)(A). *Id.* § 552a(d)(3). The district courts have jurisdiction over any action brought pursuant to the civil remedy provisions of subsection (g) including an action to correct a record. *Id.* § 552a(g)(1). In an action to correct a record, the court can order the agency to make the correction and can assess costs and fees against the United States if the complainant substantially prevails. *Id.* § 552a(g)(2). Actions may also be brought to compel access to a record or for damages in certain instances. *Id.* §§ 552a(g)(1)(B), (g)(1)(C), (g)(1)(D).

The Privacy Act limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. The countries that have been designated pursuant to that amendment are the United Kingdom and majority of the countries of the European Union. 82 Fed. Reg. 7860–61 (Jan. 23, 2017); 84 Fed. Reg. 3493–94 (Feb. 12, 2019). Turkey, where Ozturk is from, has not been designated. *See* https://www.justice.gov/opcl/overview-privacy-act-1974-2020-edition/JRA (listing countries).

Though the APA generally waives the government's immunity, § 702 "preserves 'other limitations on judicial review' and does not 'confer[] authority to grant relief if any other statute

15

. . . expressly or impliedly forbids the relief which is sought.'" *See also Match-E-Be-Nash-She-Wish Band,* 567 U.S. at 215 ("[Section 702] prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."). "'[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 216 (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)); *see Block*, 461 U.S. at 287 ("A necessary corollary of this rule [that the United States cannot be sued without the consent of Congress] is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied.").

The Privacy Act provides a specific remedy. 5 U.S.C. § 552a(g)(1)(C) states,

> Whenever an agency . . . fails to maintain any record concerning any individual with such accuracy . . . as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1)(C).

Ozturk's claims seek relief provided by the Privacy Act: the amendment of her SEVIS record. ICE maintains SEVIS records in DHS/ICE–001 Student and Exchange Visitor Information System (SEVIS) System of Records. 86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States."). The Privacy Act, however, precludes review of Ozturk's attempt to amend her SEVIS record

16

because Ozturk is a foreign national. 5 U.S.C. § 552a(a)(2) provides, "the term 'individual' means a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2).  Because Ozturk is neither a U.S. citizen nor a lawful permanent resident, the Privacy Act precludes judicial review of her claims. *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act."); *but see Parra Rodriguez v. Noem,* 2025 WL 1284722, at *6 (D. Conn. May 1, 2025) (rejecting Privacy Act as a bar to adjudicating a SEVIS claim under the APA).

**ICE had a rational reason to terminate Ozturk's SEVIS record.**

Even if ICE's termination of Ozturk's SEVIS record were reviewable, the Court should not enjoin it because ICE had a rational reason for its action. SEVIS is used in part to "maintain information on . . . F-1 and M-1 students who come to the United States." ICE, SEVIS Program, https://perma.cc/93RQ-WVLJ. Here, ICE terminated Ozturk's SEVIS record, noting that her visa had been revoked by the DOS. That information is accurate, and Ozturk does not dispute it.

That undisputed fact also distinguishes this case from the majority, if not all, of the SEVIS-related cases Ozturk cites.  Thus, it was reasonable for ICE to share it with Ozturk's school in connection with a termination of Ozturk's SEVIS record because it shows that Ozturk is subject to removal proceedings. 8 U.S.C. § 1227(a)(1)(B).

Moreover, Ozturk's authorization to work has been automatically terminated by virtue of the initiation of removal proceedings. Most critically, Ozturk's authorization to engage in OPT "automatically terminate[d]" when her "deportation proceedings [were] instituted." 8 C.F.R.

17

§274a.14(a)(1)(ii) (noting occurrences that automatically terminate work authorization granted under 8 C.F.R. § 274a.12(c)); *see also id.* § 274a.12(c)(3)(i)(C) (listing work authorization granted for nonimmigrant students authorized to engage in extended STEM OPT). Given that Ozturk's authorization to engage in OPT automatically terminated with the initiation of her removal proceedings, it is reasonable for ICE to have terminated her SEVIS record.

## OZTURK HAS NOT ESTABLISHED IRREPARABLE HARM

The Court heard evidence that Ozturk would be provided housing by her university and receive other forms of support. Even if Ozturk may not be remunerated for her teaching and research work, her motion does not allege the absence of other forms of support, be it from family, the school, or other sources. *Compare Oruganti v. Noem,* 2025WL1144560, at *4 (S.D. Ohio April 18, 2025) (finding irreparable harm when APA SEVIS plaintiff alleged loss of her "only source of income.")

## REQUEST FOR BOND

In the event the Court issues a preliminary injunction, the Court should require Petitioner to post a security bond in an appropriate amount. Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, "[t]he [C]ourt may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## CONCLUSION

As explained above, the motion for a preliminary injunction should be denied and the Court should dismiss Ozturk's SEVIS-related claim. This Court is the wrong venue and lacks

subject matter jurisdiction to consider it. In addition, for the reasons stated above, Ozturk is unable to establish a likelihood of success on her SEVIS claim, wherever it gets litigated.

                                        Respectfully submitted,

Dated: June 2, 2025         By:    */s/ Michael P. Drescher*
                                            Michael P. Drescher
                                            Assistant United States Attorney
                                            District of Vermont