UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| RUMEYSA OZTURK, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 25-cv-374 |
| DONALD J. TRUMP, et al. | ) | |
| Respondents. | ) | |

**OPPOSITION TO MOTION FOR LIMITED DISCOVERY**

The Court should deny Petitioner Rumeysa Ozturk's Motion for Limited
Discovery, ECF No. 150, because the record already before the Court is sufficient
to assess the merits of Ozturk's Petition for a Writ of Habeas Corpus and, if there is
to be discovery, it should not occur until after the government's interlocutory appeal
has been adjudicated.

**Factual and Procedural Background**

**1.  Revocation of Ozturk's Student Visa**

On March 21, 2025, the State Department issued a memorandum, ECF No.
91-1, by which it informed the Department of Homeland Security, United States
Immigration and Customs Enforcement ("ICE") that the State Department had
"approved revocation, effective immediately, of the F-1" student visa of Petitioner
Rumeysa Ozturk. The memorandum specified the revocation was pursuant to 8
U.S.C. § 1201(i), which provides, in pertinent part, "[a]fter the issuance of a  visa or

1

other documentation to any alien, the consular officer of the Secretary of State may at any time, in his discretion, revoke such visa or other documentation."

In the memorandum, a State Department official explained this discretionary decision was based on DHS/ICE's assessment that "Rumeysa OZTURK had been involved in associations that 'may undermine U.S. foreign policy by creating a hostile environment for Jewish students and indicating support for a designated terrorist organization' including co-authoring an op-ed that found common cause with an organization that was later temporarily banned from campus[.]"

In its April 18 Opinion and Order asserting jurisdiction and ordering the transfer of Petitioner to Vermont, this Court reviewed the op-ed in which Ozturk and her co-authors, on behalf of Graduate Students for Palestine, expressed agreement with other student groups, including Tufts Students for Justice in Palestine, regarding the university administration's response to the student senate's resolutions pertaining to Israel's military action in Gaza. ECF No. 104, at 3-4, 9-10.

### 2. Ozturk's Arrest and Habeas Petition

Because of the revocation of her visa, Ozturk was subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B). On March 25, 2025, ICE took Ozturk into custody in Massachusetts and transported her, through Vermont, to an immigration detention facility in Louisiana. While in Vermont, Ozturk was served with a Notice to Appear ("NTA") before an immigration judge who would determine

whether she should be removed from the United States. ECF No. 104, 6-10. Consistent with the State Department's memorandum, the NTA explained that Ozturk was removable pursuant to § 1227(a)(1)(B). ECF No. 12-2.

Ozturk filed a petition, then an amended petition, for a writ of habeas corpus in the District of Massachusetts. ECF Nos. 1, 12. In her amended petition, Ozturk alleged, consistent with the State Department's memorandum, that her "arrest and detention appear to be based solely on her co-authorship of an op-ed in her school newspaper, *The Tufts Daily,* in March 2024." ECF No. 12, ¶ 2.

Ozturk's amended petition asserted three claims for habeas relief. First, she claimed that her adverse treatment violated her rights under the First Amendment. ECF No. 12, ¶¶ 67-70. Second, she claimed her adverse treatment was in violation of her rights under the Due Process clause of the Fifth Amendment. *Id.* at ¶¶ 70-76. Third, she claimed that her adverse treatment violated the Administrative Procedures Act. *Id.* ¶¶ 77-83. Her petition also requested that she be released on bail pending the adjudication of her petition. *Id.* at ¶¶ 84-86.

On April 4, 2025, the United States District Court for the District of Massachusetts transferred Ozturk's petition to this Court. ECF No. 42.[1]

---

[1] On March 25, Ozturk's counsel filed a Petition for Writ of Habeas Corpus. ECF No. 1. On March 25, the court in Massachusetts ordered the clerk of that court to serve the Petition on Respondents. ECF No. 3. Three days later, counsel filed an "First Amended Petition for Writ of Habeas Corpus and Complaint," ECF No. 12,

### 3. The Government's Jurisdictional Arguments and Ozturk's Motion for Release.

On April 1 (in Massachusetts) and April 10 (in this Court), Respondents opposed Ozturk's Petition, principally arguing that the Courts lacked jurisdiction due to the habeas-specific rules relating to venue as well as various jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA"). ECF Nos. 19, 83. Also on April 10, Ozturk filed a motion for release pending the resolution of her petition, which the government opposed. ECF Nos. 82, 84.

Following a hearing on April 14, on April 18 this Court issued an Opinion and Order that rejected the government's jurisdictional arguments, ordered that Ozturk be transferred from the Louisiana detention facility to ICE custody within the District of Vermont, and scheduled a hearing to take up Ozturk's motion for release. ECF No. 104, at 72-73.

In its ruling, the Court reviewed the State Department memorandum's invocation of Ozturk's co-authoring the op-ed in a student newspaper, and reviewed the op-ed itself. *Id.* at 3-4, 9-10. The Court observed that Ozturk had "submitted

---

in which Petitioner specified her grounds for seeking habeas relief and also added a request for non-habeas relief, such as restoration of her SEVIS record. In her recent reply to the Respondents' motion to dismiss her non-habeas claims for improper venue, Petitioner does not dispute that her SEVIS claim falls outside the scope of habeas relief. *See* ECF No. 151. In its opinion explaining the transfer of this matter to this court, ECF No. 42, the District of Massachusetts exclusively examined Petitioner's habeas claims.

evidence to show that the actions against her were retaliatory, as the only identifiable

conduct supporting her detention is her co-authoring of a Tufts University op-ed."

*Id.* at 13. The Court further observed "[t]he government has submitted no evidence

to counter her First Amendment claim." *Id.* Later in its decision, the Court stated:

> the Court finds that Ms. Ozturk has presented significant
> evidence supporting her constitutional claims, and that
> those claims easily meet the *Iqbal* standard. Ms. Ozturk
> argues that her detention is in retaliation for her political
> speech, thus violating her rights under the First and Fifth
> Amendments. Her evidence supports her argument that the
> government's motivation or purpose for her detention is to
> punish her for co-authoring an op-ed in a campus
> newspaper which criticized the Tufts University
> administration, and to chill the political speech of others.
> The government has so far offered no evidence to support
> an alternative, lawful motivation or purpose for Ms.
> Ozturk's detention.

*Id.* at 47-48. Adding additional clarity, the Court also explained its view as follows:

> Ms. Ozturk has presented evidence to support her
> argument that she may qualify for a retaliation claim.
> Administration officials have identified her speech as the
> reason her visa was revoked. If this Court were evaluating
> the question of motivation for Ms. Ozturk's visa
> revocation, this inquiry could likely conclude now. It may
> well be that the Ms. Ozturk's detention shares common
> motivation with her visa revocation. But as this Court has
> found that visa revocation and detention proceedings are
> not inextricably linked, the Court seeks additional
> evidence of the connection between Ms. Ozturk's speech
> and her detention.

*Id.* at 56-57. With regard to the possible existence of evidence of other justifications

for Ozturk's detention, the Court "invite[d] an immediate submission of any such

evidence in this case." *Id* at 57. "In the absence of additional information from the government, the Court's habeas review is likely to conclude that Ms. Ozturk has presented a substantial claim." *Id.* at 57.

### 4. The Respondents' Interlocutory Appeal.

The government appealed from this Court's April 18 decision to the United States Court of Appeals for the Second Circuit and moved for a stay pending appeal in that court. On May 7 a panel of the Second Circuit denied that motion. *See Ozturk v. Hyde,* 136 F.4th 382 (2d Cir. 2025). In its ruling, the circuit explained that "Ozturk's core argument is that her free speech and due process rights are being violated *now*." *Id.* at 401. The Second Circuit also ruled that the government was not likely to succeed on the merits of its jurisdictional arguments. *Id.* at 390-401. In so ruling, the Court observed that the arrest of Ozturk to "prevent speech with which [the government] disagrees would be a violation of the Constitution." *Id.* at 399.

Following the panel's decision denying the motion to stay pending appeal, on May 18, the government petitioned the Court of Appeals for rehearing or rehearing en banc. That motion is pending before the circuit.

Presently, the appeal, along with that of Mohsen Mahdawi, is subject to an expedited briefing schedule before the Second Circuit. The government filed its opening brief in both appeals last week, and the circuit court has ordered that both appeals will be heard in tandem.

**5. Resolution of Ozturk's Motion for Release.**

In its May 7 decision, the Second Circuit directed that Ozturk be transferred within ICE custody to the District of Vermont by May 14, for further hearings before this court. 136 F.4th at 403-04. At the request of Ozturk, however, this Court held a hearing on her motion for release on May 9, with Ozturk appearing remotely from the Louisiana detention facility. After taking testimony from Ozturk and three other witnesses, the Court ordered that Ozturk be released pending the adjudication of her Petition. In explaining its reasoning from the bench, the Court stated:

> In the Court's opinion on April 18th, it considered the evidence submitted by Ms. Ozturk to show that her detention was in retaliation for her co-authoring an op-ed. The Court held that in the absence of additional information from the government, the Court's habeas review is likely to conclude that Ms. Ozturk has presented a substantial claim. So I essentially suggested to the government that they produce any additional information which would suggest that she posed a substantial risk or that she could contest that determination that she did not raise a substantial claim. In particular, I put the government on notice that they should immediately introduce any such evidence, and that was three weeks ago, and there has been no evidence that has been introduced by the government other than the op-ed. I mean, that literally is the case.

Tr. (May 9, 2025), at 106. The Court further noted that there was "absolutely no evidence that [Ozturk] has engaged in violence or advocated violence." *Id.* at 111.

For its part, the government explained that its objections to Petitioner's release were legal ones, including whether the Court had jurisdiction over the matter and

whether the Court had authority to issue a release order. *Id.* at 101-02. In its subsequent written ruling, the Court further explained "the government has neither rebutted the argument that retaliation for Ms. Ozturk's op-ed was the motivation for her detention nor identified another specific reason for Ms. Ozturk's detention, arguing instead that such decisions are committed to the discretion of the executive branch." ECF No. 140, at 17.

### 6. Motion for Discovery

Ozturk has now filed a Motion to Conduct Limited Discovery in Advance of Habeas Hearing. ECF No. 77. The Motion acknowledges however, that she "has already provided substantial evidence of the government's unconstitutional motive in targeting, arresting, and detaining her and other noncitizens who advocate for Palestinian human rights." *Id.* at 4. She further contends that "the government cannot be allowed to defend the legality of its actions towards her while continuing to withhold documentary or testimonial proof. And if there is no such evidence, then Ms. Ozturk is entitled to discovery to definitively establish that fact and/or to seek adverse inferences based on the lack of any such evidence." *Id.* at 5.

She pivots from her desire to know if the government intends to introduce evidence to rebut the preliminary showing that *her* detention violated her First and Fifth Amendment rights, to instead seeking discovery relating to, among other things, the decision to revoke visas and green cards of a wide range of noncitizens.

*See* ECF No. 150-1, at 5-8. Such discovery, however, is contrary to Ozturk's assurances that she is not challenging the revocation of her visa. ECF No. 26, at 25. Furthermore, she offers no justification for why assessing the legality of *her* detention requires exploration of policy development. She also seeks, without any explanation, to receive whatever discovery is produced in *Am. Assoc. of Univ. Professors. v. Rubio ("AAUP"),* No. 25-cv-10685 (D. Mass.). [2]

Without regard to the state of the record in this case, and without any showing why such information is necessary to the assessment of the legality of her detention, Ozturk seeks the identities of everyone in or associated with the Executive Branch who had any involvement with the adverse treatment she has experienced, including the identities of the agents involved in her arrest. ECF No. 150-2, at 4-5. She also wants to see "all documents" these people "created, consulted, referenced, or relied on" in relation to her treatment. Similarly, she seeks the identities of the persons aware of or receiving information about the March 25, 2025, order issued by the District of Massachusetts relating to the location of Ozturk, when that Court has already had a chance to review that question. *Compare* ECF No. 150-2, at 5, *with* ECF No. 42. She also wants to know other operational details that have nothing to do with the legality of her detention, including, for example, why the arresting agents were not in uniform and were wearing face-coverings. ECF 150-2, at 5.

---

[2] A trial is scheduled in *AAUP* for July 7.

She also seeks admissions relating to several matters that are already in the record in this case. ECF No. 150-3, at 2-4.

Finally, she also wants to take up to 7 depositions. ECF No. 150, at 1, 8.

## Legal Standard

The Supreme Court has made clear that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997). Rather, pursuant to Rule (6)(a) of the Rules Governing § 2254 Cases in the United States District Courts,[3] leave of court is required and a petitioner must show good cause before a party is authorized to conduct discovery.

In assessing whether discovery would be appropriate in *Bracy*, the Supreme Court first identified the essential elements of the habeas claim asserted in that case. *Bracy*, 520 U.S. at 904. There, petitioner claimed his custody was the product of judicial corruption because the judge who had presided over his criminal trial and sentencing had later been convicted of taking bribes from defendants in other criminal cases. *Id.* at 900-01. The petitioner sought discovery to try to establish that

---

[3] These rules may be applied to habeas petitions brought pursuant to other provisions, including immigration-related habeas cases brought pursuant to 28 U.S.C. § 2241. *See, e.g., Khalil v. Joyce,* 2025 WL 849803, at *11 n.6 (S.D.N.Y. March 19, 2025); *Diakhate v. Casey,* 2024 WL 4882264, at *2 (W.D.N.Y. November 25, 2024); *Yosef v. Killian*, 646 F. Supp. 2d 499, 504 n.4 (S.D.N.Y. 2009); *see also* Rule 1(b) of Rules Governing § 2254 Cases ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule (1)(a)").

his proceedings were corrupted by the judge's need to demonstrate pro-prosecution bias in cases where the judge did not receive a bribe from the defendant "to allay suspicion of his pattern of corruption and dishonesty." *Id.* at 902, 906. Petitioner also asserted that his criminal defense attorney may have been appointed with the understanding that the attorney "would camouflage" the judge's bribe negotiations in other cases. *Id.* at 908. The Supreme Court emphasized that petitioner's claim was "only a theory" and "not supported by any solid evidence." *Id.*

Reiterating the rule it announced in *Harris v. Nelson,* 394 U.S. 286, 300 (1969), the Supreme Court explained that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy,* 520 U.S. at 908-09.

On the other hand, discovery is not warranted where "the facts relevant to the limited questions currently facing the court . . . are not in dispute," *Khalil v. Joyce,* 2025 WL 849803, at *11 n.6 (S.D.N.Y. March 19, 2025), or where an immigration-related "petitioner has failed to demonstrate that discovery is necessary to the determination of the claims" in his petition. *Alexis v. Holmes,* 2004 WL 2202646, at *3 (W.D.N.Y. Sept. 29, 2004).  In other words, if discovery is not needed to assess

11

the requested habeas relief, good cause has not been shown. *Yosef v. Killian*, 646 F.

Supp. 2d 499, 504 n.4 (S.D.N.Y. 2009).

In this case, as the Court has explained, the principal issue is whether there is

a causal connection between Ozturk's co-authoring the op-ed in the Tufts student

newspaper, and her adverse treatment—specifically her detention. *See* ECF No. 140,

at 16.

## **Argument**

### 1. **The Court Should Stay Consideration of any Discovery Request Until Resolution of the Pending Appeal and Pending Motion to Dismiss.**

As noted above, the government has appealed to the United States Court of

Appeals for the Second Circuit from this Court's April 18 Order. *See* ECF No. 105.

The crux of the government's arguments on appeal are that this Court lacks

jurisdiction over the petition pursuant to the rules relating to habeas jurisdiction and

various provisions of the INA. While the motions panel denied the government's

motion for a stay pending appeal, respondents have petitioned the Second Circuit for

rehearing and rehearing en banc from that preliminary ruling. Furthermore, the

briefing on the underlying appeal is subject to an accelerated schedule. Respondents'

brief having been filed last Friday, June 27, 2025, petitioner's brief is due August

18, 2025, and the government's reply brief is due September 2, 2025.

As a threshold matter, this Court must have jurisdiction to consider the underlying habeas claim before discovery could be ordered. *See Diakhate v. Casey,* 2024 WL 4882264, at *3 (W.D.N.Y. Nov. 25, 2024) (declining to order discovery because "[a]t best, the information appears potentially related to the legitimacy of [p]etitioner's removal order. But . . . this Court has no jurisdiction over any claims attacking the legitimacy of [p]etitioner's removal order.") Accordingly, there should be no discovery until the threshold question of jurisdiction has been conclusively resolved and Petitioner's motion for discovery should be denied on that basis.

### 2. Ozturk Has Not Shown Good Cause for the Requested Discovery Because The Facts Relevant to the Question Before the Court Are Not in Dispute.

Ozturk's requests for discovery should also be denied because there are no disputed facts relating to the reason behind Ozturk's detention: she was detained following the State Department's revocation of her student visa under 8 U.S.C. § 1201(i), and that revocation was substantially caused by her co-authoring a student newspaper op-ed. *See* ECF No. 91-1, at 6. The visa revocation, in turn, rendered Ozturk removable pursuant to 8 U.S.C. § 1227(a)(1)(B). The Court has invited the government to produce evidence of some additional or alternative reason for her detention and has made clear what inferences it will draw in the absence of such evidence.

Rather than acknowledging the record before the Court, Petitioner argues that discovery is necessary for her to be able to show "intent" and suggests "intent is an

element" she has to prove to obtain habeas relief, citing cases involving claims of constitutional torts against non-federal actors under 42 U.S.C. § 1983. ECF No. 150, at 3. Those cases are inapposite. This is not a case about money damages, and "[r]elease from custody is not an available remedy under" § 1983. *Preiser v. Rodriguez,* 411 U.S. 475, 479 (1973).

Given this undisputed factual record, there is no good cause for discovery—especially at this time while the Court's jurisdiction is being appealed.

### 3.  The Scope of the Requested Discovery is Overbroad and Such Discovery Will Not Shed Incremental Light on the Issues to Be Resolved.

The request for discovery should also be denied because its scope is unreasonable and not connected to the issues before this Court.

For example, Petitioner seeks discovery relating to the revocation of her visa and the initiation of removal proceedings—issues that she has explicitly conceded she is not challenging. *Compare* ECF No. 150-1, at 5-7, 150-2, at 4 (seeking discovery relating to revocation of her visa and determination of removability) *with* ECF No. 81, at 21 ("While the government's Policy also lay behind the revocation of her visa and placement in removal proceedings, she does not, in this Court, challenge those actions."). She also seeks information relating to the implementation of certain executive orders "related to the revocation of visas or green cards, or the surveillance, arrest, detention, or deportation of noncitizens[.]" ECF No. 150-1, at 7. There is no reason for this habeas case, in which the only question is the legality of

14

Petitioner's detention, to examine the Executive's immigration policies as to all noncitizens generally. She also wants—again without any explanation—materials that have been produced in a different lawsuit. *Id.*

Similarly, there is no reason to permit Petitioner to access the identities of "everyone from the most senior agency officials (e.g., Respondent Secretary Rubio and Respondent Secretary Noem) to the most junior agency officials, officers, employees, agents, contractors, consultants, or subordinates" who were involved in any of the conduct from which Petitioner seeks relief. ECF No. 150-2, at 4-5. The same problems attach to Ozturk's desire to learn how the government came to be aware of the op-ed. *Id.* at 5-6. Such data have no bearing on the legality of her detention. Perhaps discovery like this would be permitted in an analogous § 1983 action, but there is no cause for it in this habeas case.

She also seeks discovery relating to the order issued in the District of Massachusetts seeking to keep Ozturk in that district on March 25, 2025. ECF No. 150-2, at 5. The District of Massachusetts, however, has had ample opportunity to adjudicate whether that order was violated. *See* ECF No. 42. Furthermore, that order did not address whether Ozturk should remain detained, and so the requested information is not pertinent to any of issues that remain before this Court.

As the above-cited cases establish, discovery is not warranted where the facts relevant to the question before the court are not in dispute. *See Khalil v. Joyce,* 2025

WL 849803, at *11 n.6 (S.D.N.Y. March 19, 2025). Here, Ozturk has not explained how her requested discovery is necessary to the determination of her petition, rather she attempts to litigate this case as if it were one for money damages. But it is not.

She has failed to establish good cause, and the motion for discovery should be denied. *See Alexis v. Holmes,* 2004 WL 2202646, at *3 (W.D.N.Y. Sept. 29, 2004) (denying discovery motion for failure to demonstrate discovery was necessary to the determination of the claims in the petition).

It also bears emphasis that the Supreme Court has held that the conduct of the nation's foreign policy is not fodder for discovery in immigration-related litigation. In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487-92 (1999), petitioners who had been targeted for removal because of their First Amendment associations sought habeas relief, and wanted to develop a record to support their constitutional claims. The Court explained that "[t]he Executive should not have to disclose its 'real' reasons for deeming nationals of a particular country a special threat—or indeed for simply wishing to antagonize a particular foreign country by focusing on that country's nationals—and even if it did disclose them a court would be ill equipped to determine their authenticity and utterly unable to assess their adequacy." 525 U.S. at 491.

Especially where, as here, the factual record is sufficient for the petition to be adjudicated, permitting the discovery of the sort Ozturk desires is pure cost creation,

and runs afoul of Rule 1 of the Rules of Procedure, admonishing that the Rules of Civil Procedure, including the rules relating to discovery, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (made applicable to habeas cases by Fed. R. Civ. P. 81 and Rule 12 of the Rules governing cases under 28 U.S.C. § 2241).

### 4. Discovery is Not Warranted, and Would be Irregular, with Regard to Petitioner's APA Claims.

Finally, to the extent Ozturk's claims fall under the Administrative Procedure Act, discovery is also not warranted. "It is well established that in examining the 'determination or judgment which an administrative agency is alone authorized to make,' the reviewing court must judge the propriety of such action 'solely by the grounds invoked by the agency.'" *Almaklani v. Trump,* 444 F. Supp. 3d 425, 430 (E.D.N.Y. 2020) (quoting *Diallo v. U.S. Dep't of Justice Bd. Of Immigration Appeals,* 548 F.3d 232, 235 (2d Cir. 2008)). Accordingly, "the standard discovery tools do not apply." *Id.* In *Almaklani,* the plaintiffs raised a constitutional challenge under the APA to the administration of immigration practices and sought discovery. *Id.* at 428-29. As in this case, the agency had produced a record regarding the basis for its decisions. The court rejected plaintiffs' requests for discovery despite the constitutional nature of their claims because "to allow broad ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a

constitutional claim, would be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record." *Id.* at 434.

## CONCLUSION

For the above reasons, the Court should deny the motion for discovery.

Respectfully submitted,


Dated: June 30, 2025          By:    /s/ *Michael P. Drescher*
                                     Michael P. Drescher
                                     Assistant United States Attorney
                                     District of Vermont